1
2
3
4
5
6
7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   E & J GALLO,                          CASE NO. CV-F-10-411 LJO JLT

12              Plaintiff,                  **ORDER   ON   COUNTERCLAIM
                                            DEFENDANTS'  SUMMARY  JUDGMENT**
13                                          **MOTION** (Doc. 202)

14        vs.

15   PROXIMO SPIRITS, INC. and AGAVERA
     CAMICHINES, S.A. DE C.V.,              **ORDER ON COUNTERCLAIM
16                                          DEFENDANTS' MOTION TO EXCLUDE**
                                            (Doc. 192)
17              Defendants.

18   _____

19   and related counterclaims.

20   _____/

21                              **INTRODUCTION**

22        Defendants Proximo Spirits, Inc. ("Proximo") and  Agavera Camichines, S.A. de C.V.

23   ("Agavera") (collectively "Proximo plaintiffs") filed a countercomplaint against E & J Gallo ("Gallo"),

24   Alto Spirits, Ltd., Ecco Domani USA, Inc., ("Ecco"), Tequila Supremo, S.A. de C.V. ("Tequila

25   Supremo") and Casa Tequilera Viejo, S.A. de C.V. (collectively "Gallo defendants"), asserting that the

26   Familia Camarena tequila infringes the trade dress of the 1800 brand tequila.  In the counter-complaint,

27   the Proximo plaintiffs assert that the: (1) Camarena bottle design infringes the 1800's registered trade

28   dress under the Lanham Act §32; (2) Camarena bottle design constitutes a false designation of origin

                                              1

1   under Lanham Act §43(a); and (3) sale of the Camarena bottle design constitutes unfair competition

2   under common law (collectively, "trademark infringement counterclaims"). The Gallo defendants move

3   for summary judgment in their favor, pursuant to Fed. R. Civ. P. 56, on the Proximo plaintiffs'

4   trademark infringement claims.[1]   The Gallo defendants argue that these counterclaims fail as a matter

5   of law, because: (1) the Proximo plaintiffs cannot raise a triable issue of fact on the distinctiveness of

6   their claimed trade dress; and (2) there is no evidence that relevant customers are likely to be confused,

7   based on the packaging, that Camarena tequila is made or distributed by the same company that makes

8   1800 tequila. By separate motion, the Gallo defendants move to exclude the reports and testimonies of

9   Henry D. Ostberg, Ph.D. ("Dr. Ostberg") and Robert M. Frank, Ph.D. ("Dr. Frank") because, according

10   to the Gallo defendants, neither the Ostberg Report nor the Frank Report meets the standards mandated

11   by *Daubert v. Merrill Dow Pharm.,* 509 U.S. 579 (1993) or Federal Rules of Civil Procedure 702. For

12   the following reasons, this Court DENIES the Gallo defendants' motion to exclude but GRANTS the

13   Gallo defendants' Fed. R. Civ. P. 56 motion for summary judgment as to the Proximo plaintiffs' first,

14   second, and third counterclaims.

15                                                    **BACKGROUND**

16                                                    **Introduction**

17          The Proximo plaintiffs' counter-complaint asserts that the trade dress of the Gallo defendants'

18   Camarena brand tequila infringes on the trade dress of 1800 brand tequila.[2]   According to the Gallo

19   defendants, the central issue of the trade dress infringement counterclaims is whether relevant

20   consumers are likely to believe–as a result of any similarity in the trade dress of the two products–that

21   the makers of 1800 Tequila also make, sponsor, or authorize Camarena Tequila. The Proximo plaintiffs

22   agree, arguing that their trademark counterclaims are based on the Gallo defendants' alleged improper

23   use of a trapezoidal-shaped bottle design which is confusingly similar to the trapezoidal-shaped bottle

24   _____

25          [1]This Court addresses the Gallo defendants' motion as to the fourth counterclaim for fraudulent misrepresentation

26   by separate order.

27          [2]1800 brand tequila is imported into the United States from Mexico by defendant and counterclaimant Proximo.
     Defendant Agavera owns the exclusive United States trademark and trade dress rights to 1800 Tequila in the United States.
     Non-party Ex Hacienda Los Camichines, S.A. de C.V. owns the 1800 Tequila trademarks and trade dress rights in Mexico.

28   Agavera and Hacienda are allegedly part of "Casa Cuervo," which controls the Jose Cuervo network of companies.

long associated with 1800 tequila.

## 1800 Tequila

The 1800 line of tequila products was introduced in the United States market in the 1970s. 1800 tequila is one of the five largest selling brands of tequila in the United States. At this time, there are three products in the 1800 tequila line–Silver, Reposado and Añejo.

In 2010, certain aspects of the 1800 trade dress changed. Pictured and described more fully below, all three products have bottles that are trapezoidal in shape. The Silver and Reposado feature a top made of glass that works as a shot glass. The Añejo has a wooden top.

Proximo began distributing 1800 tequila for Agavera in 2008. Approximately 630,000 cases of 1800 product were sold to Proximo for distribution in the United States in 2010. The suggested retail price of 1800 Silver and Reposado is approximately███████████████████████████████████████████████ ████████████████████████████. The suggest retail price of 1800 Añejo tequila is███████████████████████████. Accordingly to Nielsen data, the 1800 Añejo product accounted for ████ of total sales of 1800 tequila in the United States.

Proximo spent between███████████████████████to advertise 1800 tequila in 2010. Proximo advertises 1800 tequila on television, in print, and at sporting events. Proximo has a sponsorship deal for 1800 tequila with the New York Knicks via Madison Square Garden and with the Los Angeles Lakers via Staples Center. Proximo also features Michael Imperioli, an actor from the former television show the Sopranos, in television ads for 1800 tequila.

## Gallo's Entry into Tequila Market

Gallo is a well-known producer and distributer of wines. In recent years, Gallo also began distributing spirits. Gallo introduced New Amsterdam gin in the United States in 2007. The next year, Gallo decided to enter the United States tequila market.

Gallo sought to offer a pure agave tequila at a price point between "mixto" tequilas, which sell for less than $13 per 750 milliliter bottle, and the higher-end "super-premium" or "ultra-premium" pure agave tequilas, which are typically priced over $20 for a 750 milliliter bottle. Pursuant to law, pure agave tequila may only be produced and bottled in certain areas of Mexico. Gallo therefore entered into

1  an exclusive supply agreement with Tequila Supremo, a tequila supplier in Jalisco, Mexico.  According

2  to the agreement, Tequila Supremo would distill and bottle the tequila in Mexico and Gallo would

3  imports and distribute the tequila in the United States market.

4  **Product and Package Design Process**

5  Gallo launched its "tequila development plan" in September 2008.  The company spent fifteen

6  months and almost ████████ developing its new tequila.  According to Gallo, Gallo personnel visited

7  the highlands of Jalisco, Mexico "to gain an understanding of tequila production and of Mexican history,

8  architecture, iconography, and culture surrounding tequila."  Gallo's design team then evaluated a

9  variety of taste profiles, brand names, label designs, color schemes, closure options, and bottles shapes,

10  using consumer focus groups and other sophisticated consumer research.  Gallo maintains that its team

11  exhaustively studied consumer attitudes and usage patterns, perceptions and preferences of different

12  brand names, product imagery, label statements, and product colors and shapes.

13  Gallo submits detailed presentations developed by its marketing team based on information

14  gathered from focus groups sessions that took place ███████████████████████████████████████

15  ████████████████████████████████████  At these focus group sessions, the participants were

16  ████████████████ Gallo submits ████████████████████████████████ The Proximo plaintiffs argue

17  that   the   bottle   shape   of   stimuli   shown   to   focus   group   participants

18  was ████████████████████████████████

19  At the end of the fifteen-month process, the tequila brand name and bottle design were selected,

20  according to the Gallo defendants, based on the following considerations:

21  Gallo and Tequila Supremo agreed that the name of the new product would be Familia
    Camarena, to convey the authentic historical and cultural roots of the Camarena family,
22  producers of fine tequilas for many generations.  The final package design Gallo chose
    for Camarena likewise makes key architectural, historical, and cultural references.  The
23  Camarena bottle has arched shoulders, intended to reflect the designs of doors and
    windows in Mexican churches and important public buildings.  The bottle's sides are
24  slanted, echoing the pyramids of ancient Mexico.  These unmistakable cultural and
    historical cues signal to consumers that Camarena can trace its roots historically over
25  many generations and is made following established traditions of fine Mexican tequilas.

26  Gallo Mot., pg. 3 (citations omitted).

27  Familia Camarena has two tequila products: Silver and Reposado.  The Silver has a light blue

28  color scheme.  The Reposado has an earthy red color scheme.

4

The Proximo plaintiffs allege that Gallo copied the 1800 bottle trade dress in its process to design the Familia Camarena tequila bottle.  The Proximo plaintiffs draw inferences from evidence filed under seal to support its position that the Familia Camarena bottle infringes on the 1800 bottle.  The Proximo plaintiffs argue the following:

    1.    No markings on the bottle indicate any particular architectural, historical or cultural references.

    2.

1 ██████████████████████████████████████████████████████
2 ██ ██████████████████████████████████████████████████████
3 ██████████████████████████████████████████████████████████
4 ██████████████████████████████████████████████████████████
5 ██████████████████████████████████████████████████████████
6 ████████████████████████████████████████████

### International Infringement Actions

One month before the launch of Camarena Tequila, in February 2010, Tequila Supremo received a demand letter from the Proximo plaintiffs' Mexican affiliate threatening immediate legal action to stop the advertising, distribution and sale of Camarena. The letter claimed that Camarena "is packaged in a bottle of similar to the point of causing confusion" with the 1800 bottle design. Trade dress infringement proceedings were initiated in Mexico, based on the alleged infringement of the trade dress rights in Mexico. Those proceedings are pending.

In response, Gallo initiated this Declaratory Judgment Action in the United States, seeking a declaration that the trade dress of Familia Camarena Tequila does not infringe on the trade dress of the 1800 bottle. As set forth above, the Proximo plaintiffs filed a countercomplaint, asserting that the Camarena tequila bottle infringes the trade dress of the 1800 tequila.

### Familia Camarena and 1800 Trade Dress

The Familia Camarena Silver and 1800 Silver tequila bottles are pictured below:

  

Gallo contends that the products share only a single trade dress element: slanted sides.  The Gallo defendants assert that the Proximo plaintiffs cannot have a monopoly on this design feature.  Gallo points out that the tequila landscape is crowed with many other products with "slant-sided" bottled.  To support this position, Gallo submits the following picture of tequila bottles in the United States market that have  slanted sides:



In the photograph above, the Familia Camarena products are on the second row from the top, with the Silver and Reposado being the second and third bottles from the left.  The 1800 tequila products are in the second row from the bottom, with the Añejo on the far left, Reposado in the middle, and the Silver on the far right.

The Proximo plaintiffs admit that other tequila bottles in the United States market have slanted sides, but assert that the Tequila Camarena bottle is the most similar to the 1800 bottle.  The Proximo plaintiffs allege that the following characteristics of the Camarena tequila infringe on the 1800 trade dress:

1   The elements of Agavera's trade dress which are infringed by the Counterdefendants
2   include the overall shape of the bottle, a bottle that is wider at its base than it is at the
    shoulders from both a front and side view, the wooden closure on the top of the bottle,
3   the color scheme on the labeling similar to that of the 1800 line of products (e.g.
    blue/silver with the Silver product, orange/red and gold with the Reposado product), the
4   gold highlighting lines for the Reposado product, the silver highlighting lines on the
    Silver product, the debossed glass (which in both the 1800 and Camarena products can
5   be interpreted to depict leaves of an agave plant), the flange at the top of the neck of the
    bottle (the base of the wooden closure), the neck width, and the family crest.  All of these
6   are all elements of the 1800 trade dress which are infringed by the Camarena product.

7   Gary Decl. Exh. 2 at 2.

8   ## Alternative Bottle Design

9        Because the bottle pictured above ("2009A design") was subject to legal proceedings in the

10  United States and Mexico, Gallo elected to have Tequila Supremo switch production to an alternative

11  bottle design, designated at 2009B.  The 2009B design eliminates the bottle's slanted sides.  Gallo

12  currently distributes Familia Camarena Tequila using the alternative 2009B bottle design.  Between

13  Camarena's introduction of the 2009A bottle in March 2010 and the switch-over to the 2009B bottle,

14  however, Gallo had distributed ███████████████████████████████ – of tequila in the United

15  States market using the 2009A design.

16  ## Ford Survey

17       To support its claim that there is no likelihood of confusion, Gallo offers the survey of Gerald

18  L. Ford, Ph.D. ("Dr. Ford").  Dr. Ford has over thirty-five years of experience and is a survey expert.

19  Dr. Ford conducted a survey on behalf of the Gallo defendants and concluded that no likelihood of

20  confusion between the two tequila products exists.

21       Dr. Ford conducted a likelihood of confusion survey using the survey format endorsed in the

22  case of *Union Carbide Corp. v. Ever-Ready, Inc*., 531 F.2d 366 (7th Cir. 1976) ("*Everready* survey").

23  Under Dr. Ford's direction, interviewers showed 216 qualified respondents in the test cell a bottle of

24  Camarena Tequila and then asked the following questions, among others: (1) "Who, or what company,

25  do you believe puts out this product?"; (2) "What other brand or brands, if any, do you believe are put

26  out by the company that puts out this product?"; (3) "Do you believe that this product...is being put out

27  with the authorization or approval of any other company or companies?"; and (4) "Do you believe that

28  the company that puts out this product...has a business affiliation or business connection with any other

8

company or companies?"  These questions were following by further probing questions, e.g. "Why do you say that?"  All responses were recorded verbatim, double-blind conditions were maintained, and an experimental control was used.

After the experimental control was applied, fewer than one percent of respondents exhibited a belief that the makers of 1800 Tequila also made, sponsored, or approved of Camarena Tequila.  Dr. Ford concluded that these results "clearly" indicate "no likelihood of confusion."  The Proximo plaintiffs' previous motion to exclude Dr. Ostberg's report pursuant to Fed. R. Civ. P. 403 was denied.

**Ostberg Report and Testimony**

The Gallo defendants move to exclude the report and testimony of Dr. Ostberg, a trademark survey expert retained by the Proximo plaintiffs to review and critique Dr. Ford's report.  Dr. Ostberg has conducted over 2,000 consumer surveys for large companies and corporations.

Dr. Ostberg opines that the Dr. Ford survey "tells us nothing" about possible confusion among relevant consumers.  In his report, Dr. Ostberg criticized the survey for failing to show consumers the 1800 Tequila bottle together with the Familia Camarena Tequila bottle.  Because the 1800 Tequila bottle was not shown to those consumers surveyed, Dr. Ostberg determined that Dr. Ford's survey did not measure the ultimate issue of whether consumers, while encountering Familia Camarena tequila in the marketplace, would believe that it is affiliated with 1800 tequila because of the similarity of the packaging.  In Dr. Ostberg's opinion, the "finding in the Ford survey, that [no one] mentioned the 1800 Tequila brand when shown the Familia Camarena tequila bottle may indicate nothing more than that the 1800 Tequila brand did not come to mind instantly when respondents were exposed to the Familia Camarena bottle." Thompson Decl. Exh. 2 at p.7.

**Frank Report and Testimony**

The Gallo defendants move to exclude the report and testimony of the Proximo plaintiffs' expert witness, Dr. Frank.  Dr. Frank visited 17 liquor stores in four states and the District of Columbia and took pictures of the parties' tequila products on the shelves.  Dr. Frank then evaluated the usage of the 1800 tequila trade dress in the marketplace and how 1800 tequila and Camarena tequila are positioned in the marketplace.  Dr. Frank found that 1800 Tequila and Camarena tequila were found either on the same shelf, on a shelf above or below one another, usually within three feet of each other.

1

**Procedural History**

2          Counterclaimants moved for summary judgment on their fourth counterclaim on December 9,

3  2011.  On the same day, Counterclaim defendants also moved for summary judgment in their favor on

4  all counterclaims.  The parties filed oppositions to the motions on January 6, 2012 and replies on

5  January 17, 2012.  This Court found this motion suitable for a decision without a hearing and vacated

6  the January 24, 2012 hearing set on this motion pursuant to Local Rule 230(g).  Having considered the

7  parties arguments, this Court issues the following order.

8                                      **STANDARDS OF REVIEW**

9          Fed. R. Civ. P. 56 permits a "party against whom relief is sought" to seek "summary judgment

10  on all or part of the claim."  In a summary judgment motion, a court must decide whether there is a

11  "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398

12  U.S. 144, 157 (1970).  A party seeking summary judgment/adjudication bears the initial burden of

13  establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

14  323 (1986).  The moving party may satisfy this burden in two ways: (1) by presenting evidence that

15  negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

16  party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving

17  party's claim, and on which the non-moving party bears the burden of proof at trial.  *Id.* at 322.  "The

18  judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and

19  any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

20  to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "If the party moving for summary judgment

21  meets its initial burden of identifying for the court those portions of the material on file that it believes

22  demonstrates the absence of any genuine issues of material fact," the burden of production shifts and

23  the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W.*

24  *Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R.

25  Civ. P. 56(e)).

26          To establish the existence of a factual dispute, the opposing party need not establish a material

27  issue of fact conclusively in its favor, but "must do more than simply show that there is some

28  metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set out specific facts showing that there is a genuine issue for trial." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

## DISCUSSION

### I.    Trade Dress Infringement Claims

The Proximo plaintiffs' trade dress infringement counterclaims assert claims of trademark infringement, false designation of origin and unfair competition under the Lanham Act section 43(a). "The text of §43(a) provides little guidance as to the circumstances under which unregistered trade dress may be protect." *Wal-Mart Stores v. Samara Bros.,* 529 U.S. 205, 210 (2000). The statute "does require that a producer show that the allegedly infringing feature is not "function." *Id*. In addition, a plaintiff must show that the alleging infringing feature "is likely to cause confusion with the product for which protection is sought." In addition to these two elements, "courts have universally imposed" a showing of distinctiveness, "since without distinctiveness the trade dress would not 'cause confusion as to the origin, sponsorship, or approval of [the] goods," as section 42(a) requires. *Id*. Accordingly, to sustain a claim for trade dress infringement, the Proximo plaintiffs must prove the following three elements: (1) the allegedly infringing Camarena trade dress is nonfunctional; (2) the 1800 trade dress serves a source-identifying role either because it is inherently distinctive or has acquired a secondary meaning; and (3) Gallo's offering and sale of Familia Camarena creates a likelihood of consumer confusion. *See id.*; *see also*, *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998).

The Gallo defendants move for judgment in their favor, arguing that the Proximo plaintiffs cannot prove the second two elements of the trade dress infringement claims. They first argue that the

1  Proximo plaintiffs cannot raise a triable issue of fact regarding the distinctiveness of the 1800 trade

2  dress.  Next, the Gallo defendants argue that there is no evidence of likelihood of confusion between

3  the 1800 and Familia Camarena tequila products.  In addition, and throughout their summary judgment

4  motion, the Gallo defendants challenge the "1800 trade dress" as a "hypothetical" "hodgepodge" of

5  "cherry-picked" elements that do not appear on a single product.

6      In opposition, the Proximo plaintiffs inexplicably ignore the Gallo defendants' distinctiveness

7  arguments.  The Proximo plaintiffs make no attempt to oppose the Gallo defendants' arguments that the

8  1800 trade dress as defined cannot be protected by the Lanham Act because it lacks distinctiveness.

9  Moreover, and perhaps more confusingly, the Proximo plaintiffs failed to clarify their definition of the

10  "1800 trade dress" that is the basis of their infringement claims.  While maintaining, at times, that the

11  trade dress includes all of the elements listed above, the Proximo plaintiffs' opposition focuses almost

12  exclusively on one element of the trade dress; namely, the trapezoidal shape of the bottle.  The Proximo

13  plaintiffs oppose the Gallo defendants' arguments related to the likelihood of confusion, however,

14  arguing that material questions of fact on this issue preclude summary judgment.

15      The Court begins its analysis by determining the definition and description of the 1800 trade

16  dress.  Next, the Court shall consider the scope of the trade dress protection based on the level of

17  distinctiveness the 1800 trade dress has.  Finally, if distinctive, the Court considers the arguments related

18  to the likelihood of confusion between the 1800 trade dress, the senior mark, and the Camarena trade

19  dress, the junior mark.

20          **A.      Description of the Trade Dress**

21      "Trade dress" refers generally to the "total image" of a product.  *Two Pesos, Inc. v. Taco*

22  *Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992).  The "trade dress of a product is essentially its total image

23  and overall appearance...and may include features such as size, shape, or color combination, texture,

24  graphics, or even particular sales techniques." *Id.*  Trade dress protection focuses on the plaintiff's

25  "entire selling image, rather than the narrower single facet of a trademark. *Vision Sports, Inc. v. Melville*

26  *Corp.*, 888 F.2d 609 (9th Cir. 1989).  Thus, the Court must examine the total combination of elements,

27  taken as a whole, and compare that combination with the total combination of the accused product's

28  elements.  That is, the "*tout ensemble* of the article as it appears to the average buyer is to be

12

considered." *Chun King Sales, Inc. v. Oriental Foods, Inc.*, 136 F. Supp. 659 (D. Cal. 1955), *aff'd in part, rev'd in part*, 244 F.2d 909 (9th Cir. 1957).

Through discovery, the Proximo plaintiffs defined the 1800 trade dress as follows:

> The elements of Agavera's trade dress which are infringed by the Counterdefendants include the overall shape of the bottle, a bottle that is wider at its base than it is at the shoulders from both a front and side view, the wooden closure on the top of the bottle, the color scheme on the labeling similar to that of the 1800 line of products (e.g. blue/silver with the Silver product, orange/red and gold with the Reposado product), the gold highlighting lines for the Reposado product, the silver highlighting lines on the Silver product, the debossed glass (which in both the 1800 and Camarena products can be interpreted to depict leaves of an agave plant), the flange at the top of the neck of the bottle (the base of the wooden closure), the neck width, and the family crest. All of these are all elements of the 1800 trade dress which are infringed by the Camarena product.

Gary Decl. Exh. 2 at 2. Thus, according to this description, the "1800 trade dress" would include overall appearance of the following elements, as they appear as a whole: (1) the shape of the bottle; (2) the wooden closure top; (2) the color scheme on the labeling of the Silver (blue/silver) and Reposado (orange/red and gold) on the Reposado); (3) highlighting lines (silver for Silver and gold for Reposado); (4) the debossed glass with an agave plant; (5) the neck width, and (6) the family crest.

The Gallo defendants challenge the defined trade dress as a "hodgepodge" of elements "cherry-picked" from different bottles. The Gallo defendants point out, for example that the wooden closure on the top of the bottle is only found on the Anejo bottle, whereas the allegedly offending color schemes are only found on the Silver and Reposado bottle. The Gallo defendants contend that the Proximo plaintiffs cannot define the trade dress in this manner, since no product contains all of the elements contained in the asserted description.

In opposition to this motion, the Proximo plaintiffs fail to define clearly their asserted trade dress, and the focus of their motion is inconsistent. Although this Court must consider the "tout ensemble" of the trade dress, the Proximo plaintiffs' opposition focuses almost exclusively on one element of the trade dress described above; namely, the trapezoidal-shaped bottle. The Proximo defendants address the other elements of their asserted trade dress only sporadically. For example, the Proximo plaintiffs discuss these elements in their argument related to only one of eight factors to determine whether there is a likelihood of confusion between the products. This failure to define the trade dress is even more puzzling considering: (1) the consistent attack of the definition throughout the

13

1  Gallo defendants' motion; and (2) that the Proximo plaintiffs bear the burden to establish the elements

2  of their claims.

3       If not for the sporadic mention of the other elements, the Proximo plaintiffs appear to focus their

4  trade dress definition to include only the shape of the bottle.  For example, the Proximo plaintiffs submit

5  that the 1800 product has used a trapezoidal shaped bottled design since the product was introduced in

6  the marketplace in the 1970's.  The Proximo plaintiffs assert that the U.S. trademark office has issued

7  a trademark registration for the shape of the bottle, United States Trademark Registration No. 1,807,855

8  ("855 Registration").  Based on the 855 Registration, the Proximo plaintiffs contend that the shape of

9  the bottle has achieved incontestable status.  The Proximo plaintiffs submit evidence that they and their

10  predecessors "have gone to great lengths to promote and market their unique brand identifier," the shape

11  of the bottle, as illustrated in the 855 Registration.  Moreover, the Proximo plaintiffs focus their

12  infringement action on the 2009A bottle, which the Proximo plaintiffs describe as "a trapezoidal shaped

13  bottle [that] just happens to look an awful lot like the bottle that has been used with the 1800 product

14  for decades." Prox. Opp., p. 2.  The Proximo plaintiffs argue that "the undisputable fact is that both

15  parties use the same visual mark to identify their products–namely, a distinctive trapezoidal shaped

16  bottle to promote a tequila product." *Id*.

17       The Court analyzes infringement actions based on the "total combination of elements of the

18  'trade dress' as defined by the plaintiff that is at issue." 1 *McCarthy on Trademarks and Unfair*

19  *Competition*, 8:2, 8-9.  The Proximo plaintiffs' nearly exclusive focus on the trapezoidal shape of the

20  bottle is impermissible and unavailing to the extent that they assert that the 1800 trade dress is made up

21  of all of the elements defined above.  As will be discussed more fully above, the Proximo plaintiffs make

22  little attempt to oppose the motion as to these elements.  On the other hand, the Proximo plaintiffs'

23  arguments are permissive to the extent that they are narrowing their defined trade dress to include only

24  the trapezoidal shape of the bottle.   Based on the Proximo plaintiffs' confusing arguments, it appears

25  that the they are  either: (1) impermissibly focusing on one element in its argument, to the exclusion of

26  the broadly defined trade dress; (2) cherry-picking elements when it suits the argument, while ignoring

27  others; or (3) asserting arguments related to two, separately defined trade dresses.

28       Drawing inferences in favor of the  non-moving party, this Court construes the Proximo

14

1   plaintiffs' opposition as defining two separate trade dresses: one that includes all of the elements
2   described above (the shape of the bottle, color schemes, wooden top, highlighting lines, flange on the
3   neck, neck width, and family crest) ("broader 1800 trade dress") and another that is limited to the
4   trapezoidal shape of the bottle ("bottle shape").  The Court shall analyze the trade dress infringement
5   claims as to both definitions.

6   **B.    Distinctiveness**

7        As set forth above, one of the elements of a trade dress infringement claim is distinctiveness.
8   "The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of
9   being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through
10  secondary meaning." *Two Pesos*, 505 U.S. at 769 (emphasis in original).  Thus, to establish a trade dress
11  infringement claim, the Proximo plaintiffs have the burden of proving either that the trade dress has an
12  "inherent distinctiveness," i.e., that their trade dress is so highly unusual that consumers must inevitably
13  recognize it as source-designating, or that the trade dress has "acquired distinctiveness" through having
14  acquired a secondary meaning. *See id.*  Moreover, in analyzing distinctiveness, the Court analyzes the
15  impression made by the trade dress as a whole, rather than a list of individual features. *See, e.g.,*
16  *Kendell-Jackson Winery, Ltd. v. E & J Gallo Winery*, 150 F.3d 1042, 1050-51 (9th Cir. 1998).
17  Moreover, in analyzing distinctiveness, the Court analyzes the impression made by the trade dress as
18  a whole, rather than a list of individual features. *See, e.g., Kendell-Jackson Winery, Ltd. v. E & J Gallo*
19  *Winery*, 150 F.3d 1042, 1050-51 (9th Cir. 1998).

20       The Proximo plaintiffs need not prove both inherent distinctiveness and secondary meaning.
21  They may establish that their trade dress is proctectable under the Lanham Act if the 1800 trade dress
22  has either inherent or acquired distinctiveness.[3]  The Gallo defendants submit that the "1800 trade dress"
23  has neither inherent nor acquired distinctiveness.

24  ///

25

26       [3]Although neither party raises the point, this Court notes that "in an action for infringement of unregistered trade
27  dress under §43(a) of the Lanham Act, a product's design is distinctive, and therefore proctectable, only upon a showing of
    secondary meaning." *Wal-Mart v. Samara Bros*., 529 U.S. 205, 216 (2000).  Thus, to the extent that the 1800 trade dress is
    unregistered, the Proximo plaintiffs are required to show that they have acquired secondary meaning to be eligible for
28  trademark protection under §43(a) of the Lanham Act.

1            **1.     Inherent Distinctiveness**

2          To determine inherent distinctiveness, the Court applies the *Seabrook* test, set forth *in Seabrook*

3    *Foods Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977). The *Seabrook* test allows this Court

4    to evaluate whether non-verbal symbols such as trade dress are inherently distinctive. *Id*. Under the

5    *Seabrook* test, this Court considers whether (1) the design or shape is a common, basic shape or design;

6    (2) the trade dress is unique or unusual in a particular field; and (3) the trade dress is a mere refinement

7    of a commonly adopted and well-known form of ornamentation for a particular class of goods which

8    consumers view as mere ornamentation. *Id.* at 1374.

9            **a.     Broader Trade Dress**

10         The Gallo defendants argue that the Proximo plaintiffs "cannot seriously assert" that the

11   combination of elements they have identified is "so unique, usual or unexpected" that one can assume,

12   without proof, that it will be automatically perceived by customers as an indicator of source. They argue

13   that there is nothing unusual or unique about using silver and blue color schemes on Silver tequila or

14   gold highlighting on Reposado tequila. Moreover, the Gallo defendants point out that other features,

15   such as the wooden top and the agave leaf, are incorporated commonly into a variety of tequila

16   producers. The Gallo defendants further argue that since no product has all of the elements claimed,

17   the trade dress, as a whole, cannot be viewed as distinctive. The Gallo defendants submit that on these

18   bases, the Proximo plaintiffs cannot establish inherent distinctiveness of their defined trade dress.

19         In their moving papers, Gallo also anticipated that the Proximo plaintiffs may argue that the

20   broader 1800 trade dress is inherently distinctive, because the 855 Registration that has attained

21   "incontestable" status. The Gallo defendants argued that this argument fails, because the 855

22   Registration represents only one element of the broader 1800 Trade Dress that the Proximo plaintiffs

23   defined. Indeed, the "1800 trade dress," which includes all of the elements outlined above, is made up

24   of the 855 Registration, an application (US App. Serial No. 78,615,293), currently suspended, for a two-

25   dimensional design mark, and the combination of a trapezoidal bottle shape, embossed stylized agave

26   plant and the wooden stopper used only for the 1800 Añejo tequila. Therefore, the incontestable status

27   of the 855 Registration does not establish that the broader 1800 trade dress, as defined, is inherently

28   distinctive, because the Proximo plaintiffs cannot separate out and rely on only one incontestable

element of the whole.

The Gallo defendants established the lack of inherent distinctiveness of the broader 1800 trade dress in their moving papers. They have demonstrated that the broader 1800 trade dress does not meet the *Seabrook* test of inherent distinctiveness. In addition, the Gallo defendants have established that the 855 Registration does not establish that the broader 1800 trade dress is inherently distinctive, because the 855 Registration includes only one of the many elements of the broader 1800 trade dress.

Because the Gallo defendants successfully negated an essential element of the Proximo plaintiffs' trade dress claim, the burden shifts to the Proximo plaintiffs to rebut these arguments, either through argument, a demonstration of a disputed material fact, or both. Fed .R. Civ. P. 56(e)(2) requires a party opposing summary judgment to "set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

The Proximo plaintiffs inexplicably fail to address distinctiveness in their opposition memorandum. They ignore the Gallo defendants' arguments related to both the inherent distinctiveness and acquired distinctiveness, as discussed more fully below, of the broader 1800 trade dress and the bottle shape. This failure to oppose the Gallo defendants' arguments is perplexing, particularly since distinctiveness is an essential element of their infringement claims and the Gallo defendants' arguments on distinctiveness spanned over five pages (or a full one-fifth of the memorandum). "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson*, 854 F.2d at 1545. When the opposing party fails to oppose a summary adjudication motion, this Court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101. *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

In the context of one of the factors to be considered under the separate element of their cause of action—the likelihood of confusion—the Proximo plaintiffs argue that the strength of their 1800 trade dress is high, because the "Agavera trade dress" has achieved incontestable status. The "Agavera trade dress"—a third definition of a trade dress yet to be discussed—is defined as that which has achieved

17

1    incontestable status based on the 855 Registration. The 855 Registration includes two elements: (1) the

2    trapezoidal shaped bottle; and (2) the distinctive, clear, glass, inverted pyramid-shaped "shot glass" top.

3           The 855 Registration neither establishes nor raises a question of fact regarding the

4    distinctiveness of the 1800 trade dress as defined by the Proximo plaintiffs. "[U]nder the anti-dissection

5    rule, the validity and distinctiveness of a composite trademark is determined viewing the trademark as

6    a whole, as it appears in the marketplace." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th

7    Cir. 1993). The "critical" inquiry "is the overall appearance of the mark as used in the marketplace, not

8    a deconstructionist view of the different components of the mark." *Playmakers, LLC v. ESPN, Inc.*, 297

9    F. Supp. 2d 1277, 1283 (W.D. Wash. 2003). According to the anti-dissection rule, the 855 Registration,

10   which includes only one element of the 1800 trade dress, fails to establish that the broader 1800 trade

11   dress is inherently distinctive. Moreover, the critical inquiry focuses on the overall appearance of the

12   mark as it is used in the marketplace. As the Gallo defendants point out, the defined broader 1800 trade

13   dress does not appear in the marketplace, because it includes–and excludes–elements from all of their

14   product line. For the foregoing reasons, this Court finds that the broader 1800 trade dress is not

15   inherently distinctive.

16                           **c.      Bottle Shape**

17          To the extent that the Proximo plaintiffs define their trade dress to be a trapezoidal-shaped bottle,

18   this Court agrees with the Gallo defendants that there is no inherent distinctiveness. "A trapezoid is the

19   sort of intuitive, 'ordinary geometric shape' that courts generally 'regard [] as non-distinctive and

20   proctectable only upon proof of secondary meaning.'" *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F.

21   Supp. 2d 911, 916 (C.D. Cal. 2010) (rejecting on summary judgment a claim that a trapezoidal package

22   was inherently distinctive). Moreover, as illustrated above, it is an undisputed fact that there are several

23   tequila bottles in the market that use a trapezoidal shape, as illustrated above. Finally, the 855

24   Registration does not establish the inherent distinctiveness of the bottle shape, because that "Agavera

25   trade dress" includes the clear "shot glass" top, an element that is not asserted to be part of any 1800

26   trade dress for purposes of this motion. Accordingly, the bottle shape alone is not inherently distinctive.

27                     **2.      Secondary Meaning**

28          The Proximo plaintiffs may still establish an infringement claim if their trade dress has acquired

a secondary meaning. A trade dress "has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Wal-Mart*, 529 U.S. at 211 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 551 n.11 (1982)). A plaintiff may establish secondary meaning either through direct evidence (e.g., consumer testimony or consumer surveys) or through indirect evidence (advertising expenditures, sales, length and manner of use, and exclusivity of use). 1-2A *Gilson on Trademarks*, 2A.03[2]; *see also, Straumann Co. v. Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130, 139-140 (D. Mass. 2003) (granting summary judgment based in part on second meaning evidence not addressing specific non-functional features of the trade dress).

The Gallo defendants argue that the Proximo plaintiffs have no proof of secondary meaning. They argue that the broader 1800 trade dress could not have acquired secondary meaning, since that combination of elements together does not exist in the market. As to the bottle shape, the Gallo defendants assert that bottle shape alone does not designate source. The Gallo defendants point out that the Proximo plaintiffs chose not to do a consumer survey, and conclude that there is no evidence to establish that either iteration of the 1800 trade dress has acquired secondary meaning.

In opposition, the Proximo plaintiffs remain silent. Although the Proximo plaintiffs submitted voluminous exhibits and arguments to oppose the likelihood of confusion element of their claim, the Proximo plaintiffs failed to submit either direct or indirect evidence to raise a genuine issue of fact as to whether the 1800 trade dress has acquired secondary meaning. Because the Proximo plaintiffs have offered no evidence to establish an essential element of their infringement claims, these causes of action fail.

### 3. Conclusion

"Only nonfunctional, distinctive trade dress is protected under §43(a)." *Two Pesos*, 505 U.S. at 775. Trade dress may be afforded protection under the Lanham Act if it is either inherently distinctive or has acquired secondary meaning. *Id*. Here, the Gallo defendants have established that neither the broader 1800 trade dress nor the bottle shape are distinctive. The Proximo plaintiffs, perhaps understanding their inability to establish this essential element of their §43(a) claims, failed to rebut the Gallo defendants' arguments and evidence, and failed to raise disputed questions of material fact.

1  Accordingly, for the foregoing reasons, this Court grants summary adjudication in favor of the Gallo

2  defendants and against the Proximo plaintiffs on the Proximo plaintiffs' first and second counterclaims.

3  **C.      Unfair Competition Claim**

4         The Proximo plaintiffs third claim is for common law unfair competition.  A common law

5  trademark claim is considered under the same elements as a claim under the Lanham Act. *Int'l Order*

6  *of Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912, 916 (9th Cir. 1980).  Under a claim for common

7  law unfair competition, "the ultimate test is whether the public is likely to be deceived or confused by

8  the similarity of the marks.  Whether we call the violation infringement, unfair competition or false

9  designation of origin, the test is identical: is there a likelihood of confusion?" *New West Corp. v. NYM*

10 *Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979).

11        To determine whether there is a likelihood of confusion, the Court considers eight, non-

12 exhaustive factors:

13        1.      Strength of a plaintiff's mark;

14        2.      Similarity of the marks;

15        3.      Proximity of the goods;

16        4.      Evidence of actual confusion;

17        5.      Marketing channels used;

18        6.      Type of goods and degree of care likely to be exercised by the purchaser;

19        7.      Defendant's intent in selecting the mark; and

20        8.      Likelihood of expansion of the parties' product lines.

21 *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft* factors"). Application

22 of the Sleekcraft factors is not mechanical.  "We have long cautioned that applying the Sleekcraft test

23 is not like counting beans...Some factors are must more important than others, and the relative

24 importance of each factor will be case-specific." *One Industries, LLC v. O'Neal Dist., Inc.*, 578 F.3d

25 1154, 1162 (9th Cir. 2009) (citations omitted) (granting summary judgment, notwithstanding that parties

26 were direct competitors, because marks did not look alike and no evidence of actual confusion existed).

27 Moreover, it "is often possible to reach a conclusion with respect to likelihood of confusion after

28 considering only a subset of factors." *Brookfield Comms., Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036,

1  1054 (9th Cir. 1999).

2       The parties both argue that the *Sleekcraft* factors support their positions.  The Gallo defendants

3  argue that three of the *Sleekcraft* factors, when considered together, are outcome determinative; namely,

4  the dissimilarity of the parties' respective trade dress, the weakness of the Proximo plaintiffs' asserted

5  trade dress, and the lack of actual confusion.  The Proximo plaintiffs argue that the *Sleekcraft* factors

6  raise genuine issues of fact requiring trial on the issue of likelihood of success.  The Court considers

7  each of the *Sleekcraft* factors separately and then balances the factors together to determine whether the

8  Gallo defendants have establish a lack of likelihood of confusion or whether questions of material fact

9  exist to preclude summary adjudication on this issue.

10       **1.**       **Strength of Plaintiffs' Mark**

11       As set forth above, the definition of the Proximo plaintiffs' trade dress is a moving target.  While

12  attempting to define the 1800 trade dress in terms of the broader 1800 trade dress, which includes a wide

13  variety of elements, the Proximo plaintiffs' opposition focuses almost exclusively on one element of the

14  mark; namely, the trapezoidal shape of the bottle.  In addition, in asserting that their mark is "extremely

15  strong," the Proximo plaintiffs' rely on the 855 Registration, which is a third, "Agavera trade dress."

16  The Agavera trade dress consists of the trapezoidal bottle and the clear shot glass top.

17       As to the broad 1800 trade dress and the bottle shape, there is no evidence that these trade

18  dresses are strong.  As discussed more fully above, the Gallo defendants point out that the trade dress

19  as defined does not exist in the market place on a single product and there is nothing distinctive in the

20  trapezoidal-shaped bottle. The Proximo plaintiffs do not argue that the broad 1800 trade dress, including

21  all of the elements, is strong, nor do they argue that the shape of the bottle alone is strong.  Accordingly,

22  the broad 1800 trade dress and the bottle shape are  weak.

23       The Proximo plaintiffs argue that the "Agavera trade dress" is "extremely strong" because it has

24  attained incontestable status. *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 625 (6th

25  Cir. 1998).  The Agavera trade dress includes the shape of the bottle and the shot glass top.  This Court

26  agrees that based on the incontestable status of the Agavera trade dress, that mark, when viewed together

27  a whole, is a strong mark.

28  ///

### 2.     Similarity of the Marks

In the Ninth Circuit, significant dissimilarity of the marks alone can be sufficient to establish a lack of likelihood of confusion. *See Hansen Beverage Co. v. Nat'l Corp.*, 493 F.2d 1074 (9th Cir. 2007), *vacating as moot*, 499 F.3d 923 (9th Cir. 2007).  When considering the similarity of the trade dresses, the Court focuses on the *overall impression* that is created by each, rather than comparing specific individual features. See id.   "Marks must be considered in their entirety as they appear in the marketplace." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).

As to the broad 1800 trade dress, this Court finds a significant dissimilarity of the marks.  When viewed as a whole, or tout ensemble, "the appearance of the...trade dress speaks for itself."  The parties have submitted the bottles to this Court as physical exhibits.  In addition, the parties have submitted the various renderings and photographs of the various bottles.  Having considered the trade dresses against each other, this Court finds that the Gallo defendants have established a dissimilarity of the marks.  The most distinctive features of the 1800 trade dress includes the name (which is a number) on its front label, the shape of the bottle, and its clear, pyramid-shaped shot glass top on top of the Silver and Reposado products.  Notwithstanding the shared feature of the slanted sides, the shape, height, width, and overall dimension of the 1800 and Camarena bottle shapes give no impression of similarity.  The 1800 bottles are shorter, thicker, and have sharper edges, whereas the Camarena bottles are taller, thinner, and have a softer, arched lines.  The Camarena bottles have wooden tops, which are nothing similar to the distinctive 1800 shot glass top.  The neck of the bottles are dissimilar in size.  The shape, placement, and appearance of the front labels are different.  Although the parties use blue and orangish red color schemes for their Silver and Reposado products, those colors are dissimilar.  The 1800 The Camarena trade dress includes a distinctive cigar label on the front bottom of its bottle, whereas the 1800 bottle has none.  Instead, the 1800 bottles have a distinctive agave plant embossed on the front bottom of its bottle.  The embossed agave plant appears on the top back of the Camarena bottles, though it is visible through the clear glass in the front of the bottle as well.  There are etchings on the sides of the Camarena bottles that do not appear on the 1800 bottles.  Those features do not exist on the Camarena trade dress.  The wooden top on the 1800 Anejo bottle is also dissimilar in size and shape to the Camarena wooden top.  In addition, the Anejo color scheme differs greatly from either of the Camarena products.  Though

both trade dresses include family shields, they are of different shapes and sizes. The front and back labels are distinctive, and do not appear to be from the same source. When viewed as a whole, this Courts finds an argument that the products are similar to be unavailing. Indeed, these "very significant differences weight heavily against a finding that consumer confusion is likely to result from the overall look of the packaging." *Hansen*, 493 F.3d at 1079.

This Court further finds that there is no similarity to the extent that the trade dress is limited to bottle shape. The Proximo plaintiffs argue that "the fact remains that the trapezoidal shape of the tequila bottle is the prominent feature of the mark....Gallo cannot refute that its Camarena bottle is trapezoidal in shape, and similar to the shape of the 1800 bottle. At the very least, this question should be considered by a jury." Prox. Pl. Opp., p. 8. This Court disagrees that the trapezoidal shapes are similar. Moreover, this Court disagrees that there is a question left for the jury to decide. In *Hansen*, the Ninth Circuit found that it was an abuse of discretion to find similarity of marks where the allegedly infringing marks were "widely employed in the crowded" market, reasoning:

> The two trade dresses are similar in overall appearance only to the extent that they both feature "aggressive" graphics and bold accent colors against dark backgrounds. However, these elements are widely employed in the crowded energy drink market and are therefore unlikely to lead to confusion as to source.

493 F3d at 1079. Similarly here, and as illustrated above, there are numerous trapezoidal shaped tequila bottles in the crowded market. The Proximo plaintiffs cannot rely on this feature alone, particularly when this feature is dissimilar in size, shape, dimension, and overall appearance to that of the Camarena bottle.

The parties do not argue similarity related to the Agavera trade dress. To be thorough, the Court notes that because the prominent feature of the Agavera trade dress appears to be the shot glass bottle top, and when considered as a while, the Court finds no similarity between the marks that would lead to a likelihood of consumer confusion.

### 3. Evidence of Actual Confusion

#### a. Actual Confusion

The Gallo defendants argue that there is no evidence of actual consumer confusion, despite many months of coexistence. Gallo began selling Camarena in the United States in March 2010. During the

1   one year that Gallo sold Camarena in the allegedly offending 2009A bottle, Gallo

2   sold ████████ amounting to the introduction of ████████ Camarena 2009A bottles

3   introduced into the marketplace.  The absence of any confusion, despite the vast number of consumer

4   impressions that have occurred since Gallo launched Camarena, strongly supports a finding that no

5   likelihood of confusion is likely to occur in the future.

6       The Proximo plaintiffs concede that there is no evidence of actual confusion in the marketplace,

7   but argue that the lack of actual confusion is of little importance.   The Proximo plaintiffs argue that

8   because it is difficult to gather evidence of actual confusion, an absence of actual confusion is "generally

9   unnoteworthy." Prox. Pl. Opp., p. 9 (citing *Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114,

10  1118-19 (9th Cir. 1990)).  The Proximo plaintiffs wave off the import of the lack of evidence of actual

11  confusion, asserting that it is not surprising that there is no evidence of actual confusion, since the

12  2009A product was only on the market for less than a year.  The Proximo plaintiffs conclude that the

13  lack of actual confusion is justifiable.

14      The lack of evidence of actual confusion is significant, particularly when the key question to be

15  resolved is whether there is a likelihood of confusion.  That ████████ 2009A bottles have been

16  introduced in the market, and the Proximo plaintiffs have no evidence of actual confusion, weighs

17  heavily in favor of a finding of no likelihood of confusion.

18              **b.      Market Survey**

19              **i.      The Ford Survey**

20      In addition to the lack of actual confusion, the Gallo defendants submit that the Ford survey

21  confirms the absence of the likelihood of confusion.  Survey evidence "can be highly probative on the

22  issues of secondary meaning and likelihood of confusion." *NFL Props., Inc. v. Wichita Falls*

23  *Sportswear, Inc.*, 532 F. Supp. 651, 657 (W.D. Wash. 1982); *see also, Surfvivor Media, Inc. v. Survivor*

24  *Prodns.*, 406 F.3d 625 (affirming grant of summary judgment where survey showed "absence of

25  significant confusion"); *see also*, 6 *McCarthy*, §32:158 ("the usual procedure is for one of the parties

26  to the litigation to hire a survey taker to run an appropriate survey.  The survey expert for the opponent

27  may then attack the substance and form of the other side's survey and/or counter it with a different

28  survey producing different results.").

1    As described more fully above, Dr. Ford's *Everready* survey interviewed 432 tequila consumers

2  who confirmed that there were likely, within the next three months, to purchase a 750 milliliter bottle

3  of tequila costing approximately $20.  The 216 respondents in the test cell of the survey were shown a

4  2009A bottle of Camarena and asked who or what company made or put out the product.  Of those

5  respondents, only one person expressed confusion, based on the shape of the bottle, as to the source of

6  Camarena.  Dr. Ford concluded that this result "clearly support[s[ a finding of no likelihood of

7  confusion."

8    This Court agrees that Dr. Ford's survey results and conclusion are highly probative of

9  likelihood of confusion or the absence thereof.

10                              **ii.      Motion to Exclude**

11    By separate motion, the Gallo defendants move to exclude the testimony of Dr. Ostberg, who

12  criticizes Dr. Ford's survey.  The Gallo defendants argue that the report is not based on "facts or data,"

13  as required by Fed. R. Evid. 702.  The Gallo defendants further fault the Proximo plaintiffs and Dr.

14  Ostberg for citing any judicial authority to support Dr. Ostberg's position that an *Everready* survey

15  requires the type of question that Dr. Ostberg proposes (namely, "What brands of tequila are you aware

16  of?").

17    The Proximo plaintiffs oppose the motion to exclude, arguing that Dr. Ostberg's opinion was

18  based on his expertise and specialized knowledge as well as the facts presented.  The Proximo plaintiffs

19  point out that Dr. Ostberg's report is within his area of expertise.  In addition, the Proximo plaintiffs cite

20  a number of cases that support its position that expert reports evaluation the methodology of a survey

21  are permitted under *Daubert* and Fed. R. Evid. 702.

22    This Court agrees with the Proximo plaintiffs that Dr. Ostberg's report satisfies the *Daubert*

23  criteria for admissibility.  The Gallo defendants arguments (and authority upon which they rely) are

24  related to weight the testimony should be given, not to its admissibility.  Accordingly, this Court

25  DENIES the Gallo defendants motion to exclude the testimony or report of Dr. Ostberg.

26    This ruling further applies to the Gallo defendants' attempt to exclude Dr. Frank's testimony.

27  There is no evidence that Dr. Frank has been asked to testify beyond his expertise.  The Proximo

28  plaintiffs explain that Dr. Frank will not offer the type of testimony that the Gallo defendants are

concerned with, including legal conclusions regarding trademark infringement, functionality, or distinctiveness, consumer psychology or reaction to products, and surveys. To the extent that the Gallo defendants are moving to exclude Dr. Frank's testimony to include those identified areas beyond his expertise, that motion is GRANTED. To the extent that the Gallo defendants move to exclude Dr. Frank's testimony completely, that motion is DENIED.

### iii.   Conclusions

The evidence presented in this summary judgment motion supports a finding of an absence of a likelihood of confusion. The Proximo plaintiffs admit there is no evidence of actual confusion, even though████████████2009A bottles of Camarena tequila have been introduced into the market and have been in the market since March 2010. The Gallo defendants submit the results of Dr. Ford's survey. In that survey, less than 1%, or one person out of 216, was confused about the origin of the Camarena bottle based on its shape. As mentioned above, this Court finds Dr. Ford's survey to be highly probative of the lack of likelihood of consumer confusion. Dr. Ostberg's criticisms of Dr. Ford's report challenge the strength of the findings. While the Gallo defendants' argue that Dr. Ostberg's opinions are baseless and faulty, those arguments are the subject of cross-examination. Those criticisms raise a question of fact as to the probative value of Dr. Ford's report, findings and conclusion.

Even if this Court were to disregard Dr. Ford's survey, however, the Court is left with no evidence to support the Proximo plaintiffs' position that there is a likelihood of confusion. The Proximo plaintiffs have submitted no evidence that raises a genuine issue of fact. Although they criticize the Gallo defendants' expert survey, they present no counter-survey results or any other evidence to rebut the evidence presented by Gallo. Moreover, the Proximo plaintiffs appear to misunderstand their burden. Although they challenge the Gallo defendants' evidence, they bear the ultimate burden to establish their claims. Once the Gallo defendants have satisfied their burden to establish an absence of evidence to support an element of their claim, the burden shifts to the Proximo plaintiffs point to evidence in the record to raise a genuine issue of fact. The Court finds that the Proximo plaintiffs have failed to satisfy that burden on this issue. Accordingly, this Court finds that there is no genuine issue of material fact raised and that the Gallo defendants have established an absence of likelihood of confusion.

### 4.      Defendants' Intent in Selecting the Mark

The Proximo plaintiffs argue that the intent of the Gallo defendants was to copy the 1800 bottle design.  They submit evidence to support this position.  "When the accursed infringer's state of mind is introduced as relevant to...likelihood of confusion...the only relevant intent is intent to confuse." 4 McCarthy, §23:113.  While the evidence presented above in redacted form raises an issue of fact as to whether the Gallo defendants were aware of the 1800 design, the Proximo plaintiffs do not suggest that there is evidence that the Gallo defendants' intended to confuse consumers with its product. Accordingly, this factor does not support a finding of likelihood of confusion.

### 5.      Factors Related to the Direct Competition of the Parties

Several factors relate to whether the parties and their products directly compete against each other.  These factors include the marketing channels used, the types of goods, the proximity of the goods, and the likelihood of expansion of the parties product lines.  While the parties quibble regarding some of the issues, including the price points of the products, this Court finds that there is no genuine issue of fact as to whether the parties are direct competitors.  They both market tequila products in the same approximate price range, use the same marketing channels, and compete in the same product lines (i.e., both offer Silver and Reposado tequilas).  Accordingly, these factors weigh in favor of a finding of likelihood of confusion.

### 6.      Balancing and Conclusion

The evidence presented establishes that the parties are direct competitors in the tequila market. The evidence further establishes a lack of genuine issue of material fact regarding the strength of the broad 1800 trade dress, the similarity of the trade dresses as issue and the likelihood of confusion.  That is, the 1800 trade dress is weak, the 1800 trade dress and the Camarena trade dress are dissimilar, and there is no evidence of actual or likelihood of future confusion.  These conclusions are similar to  One Industries, 578 F.3d 1154, 1165 (9th Cir. 2009), wherein the Ninth Circuit held:

> Although [the parties] are direct competitors, we are persuaded that the marks do not look alike, that [the plaintiff] has not produced evidence of actual confusion, and that no reasonable jury could infer that [defendant] deliberately appropriated the goodwill associated with the [plaintiff's] mark. The [plaintiff's] mark, while conceptually strong, is weakened by the presence of other, similar marks.

*Id.*  Under these circumstances, the court affirmed a grant of summary judgment in defendant's favor.

1   This reasoning applies equally here. *See also, Hansen*, 493 F.3d at 1080 (dissimilarities between the

2   parties' trade dress alone sufficient to find no likelihood of confusion as a matter of law).  Accordingly,

3   this Court finds that judgment shall be granted in favor of the Gallo defendants and against the Proximo

4   plaintiffs on the unfair competition counterclaim.[4]

5   **D.      Fraud Counterclaim**

6          The Gallo defendants move for judgment in their favor on the Proximo plaintiffs fourth

7   counterclaim for fraud.  This Court addresses the Gallo defendants' arguments on this claim by separate

8   order.

9                                    **CONCLUSION**

10         For the foregoing reasons, this Court:

11     1.      GRANTS judgment in favor of the Gallo defendants and against the Proximo plaintiffs

12             on the first through third counterclaims;

13     2.      GRANTS in part and DENIES in part the Gallo defendants' motion to exclude

14             testimony; and

15     3.      DIRECTS the clerk of court to enter judgment on the first through third counterclaims

16             only in favor of the Gallo defendants and against the Proximo plaintiffs.  This order does

17             **not** close this action.

18

19   **IT IS SO ORDERED.**

20   **Dated:        January 27, 2012                          /s/ Lawrence J. O'Neill**
                                                      **UNITED STATES DISTRICT JUDGE**

21

22

23

24

25

26

27   _____

28      [4]The absence of likelihood of confusion is also fatal to the Proximo plaintiffs' Lanham claims and is separate grounds to grant judgment in favor of the Gallo defendants on the first and second counterclaims.