1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9             **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   E & J GALLO,                                    CASE NO. CV-F-10-411 LJO JLT

12              Plaintiff,                   **ORDER   ON   COUNTERCLAIMANTS'**
                                             **PARTIAL   SUMMARY   JUDGMENT**
13                                           **MOTION** (Doc. 185)

         vs.
14
     PROXIMO SPIRITS, INC. and AGAVERA **PARTIAL ORDER ON COUNTERCLAIM**
15   CAMICHINES, S.A. DE C.V.,           **DEFENDANTS' SUMMARY JUDGMENT**
                                         **MOTION** (Doc. 202)
16              Defendants.

17   _____

18   and related counterclaims.

19   _____/

20                            **INTRODUCTION**

21         E & J Gallo ("Gallo") filed this Declaratory Judgment Act, 28 U.S.C. §§2201-2202 ("DJA"),

22   action seeking a declaration that Gallo's "Familia Camarena" tequila bottle and packaging do not

23   infringe on the trademark or trade dress of "1800 Tequila."  In response, defendants Proximo Spirits,

24   Inc. ("Proximo") and Agavera Camichines, S.A. de C.V. ("Agavera") (collectively "Counterclaimants")

25   filed a countercomplaint against Gallo, Alto Spirits, Ltd., Ecco Domani USA, Inc., ("Ecco"), Tequila

26   Supremo, S.A. de C.V. ("Tequila Supremo") and Casa Tequilera Viejo, S.A. de C.V. (collectively

27   "Counterclaim defendants"), asserting that the Familia Camarena tequila infringes the trade dress of the

28

                                          1

1  1800 brand tequila .[1]

2      Counterclaimants move for summary adjudication on their fourth counterclaim, which seeks

3  declaratory judgment that certain trademark registrations and applications owned by Tequila Supremo

4  and Gallo are void because they made fraudulent material misrepresentations during the prosecution of

5  the pending and issued trademark applications with an intent to deceive the United States Patent and

6  Trademark Office ("USPTO").  Specifically, Counterclaimants contend that Counterclaim defendants

7  misrepresented that each was the "single source" of the Familia Camarena tequila.

8      Counterclaim defendants both oppose this motion and move separately for summary judgment

9  in their favor on all of the counterclaims.  As to the fourth counterclaim, Counterclaim Defendants argue

10  that Counterclaimants' "single source" theory fails both factually and legally.  Counterclaim Defendants

11  assert that Gallo and Tequila Supremo were truthful in their applications and that Countervclaimants'

12  single source theory misunderstands modern trademark law.

13      In this order, the Court addresses Counterclaimants' partial motion for summary judgment and

14  Counterclaim defendants' motion for summary judgment as to the fourth counterclaim only.[2]  For the

15  following reasons, this Court DENIES Counterclaimants' Fed. R. Civ. P. 56 motion on their fourth

16  counterclaim and GRANTS Counterclaim defendant's Fed. R. Civ. P. 56 motion on the fourth

17  counterclaim.

18                                    **BACKGROUND**

19                                    **Introduction**

20      In 2008, Gallo contracted with Tequila Supremo, a tequila supplier in Mexico, to produce

21  Familia Camarena tequila ("2008 Agreement").  Tequila Supremo distills and bottles Familia Camarena

22  tequila, and Gallo imports it to and distributes it in the United States market.  1800 Tequila is distributed

23  in the United States by Proximo.  Agavera owns United States registered trademarks for the trade dress

24  and design mark of the 1800 tequila bottle.

25

26      [1] Although the fourth counterclaim alleges facts against Tequila Supreme and Gallo only, the counter-complaint does
not limit the claim to those counterclaim defendants.

27

28      [2] This Court addresses Counterclaim defendants' motion for summary judgment as to the first through third
counterclaims by separate order.

1     Tequila Supremo and Gallo are separate business entities with no direct corporate relationship.

2   Gallo has no ownership interest in Tequila Supremo and Tequila Supremo has no ownership interest in

3   Gallo.  Tequila Supremo and Gallo share no common owners, officers, or directors.

4     The tequila that developed from the 2008 Agreement between Counterclaim defendants was to

5   be sold in the United States using the FAMILIA CAMARENA trademark or another mark that included

6   the term CAMARENA).

7                          **Trademark Registrations and Applications**

8     In their fourth counterclaim, Counterclaimants seek declaratory judgment that certain trademark

9   applications and registrations filed and acquired by Tequila Supremo and Gallo are void.

10   Counterclaimants further seek an order directing the Commissioner of the PTO to cancel those

11   applications and registrations, because they allegely fail to comply with one or more requirements of the

12   registration.  Counterclaimants fourth counterclaim are based on the following facts:

13     On April 2, 2008, Tequila Supremo filed an application to register the trademark

14   "CAMARENA." On February 10, 2009, the application issued as United States Trademark Registration

15   No. 3,574,282 ("282 Registration").  The 282 Registration was assigned to Tequila Supremo on April

16   15, 2009 and recorded in the USPTO on May 7, 2009.

17     On June 25, 2009, Tequila Supremo also filed United States Trademark Application No.

18   77,767,966 ("966 Application") for trademark "FAMILIA CAMARENA"  On April 12, 2011, 966

19   Application was approved by the USPTO, which issued the registration to Tequila Supremo under

20   United States Trademark Registration No. 3,945,075 ("075 Registration").

21     Also on June 25, 2009, Tequila Supremo filed United States Trademark Application No.

22   77,768,066 ("066 Application") to trademark "Familia Camarena 1761."  That application appears to

23   remain pending.

24     Counterclaimants assert that in the 282 Registration, the 966 Application, and the 066

25   Application, Tequila Supremo identified itself as the "single source" of Familia Camarena Tequila.

26   Counterclaimants argue that Tequila Supremo identifies itself as the single source of the tequila through

27   its use of the 282 and 075 Registrations, its intention to use the 066 Application, and because Tequila

28   Supremo does manufacture the Familia Camarena Tequila.

1    On March 11, 2010, Gallo filed United States Trademark Application No. 77,957,172 ("172

2   Application") and Application No. 77,957,175 ("175 Application") for design marks.  Each application

3   seeks to register bottle designs of the bottles that were to be used to bottle Familia Camarena Tequila.[3]

4    According to the Counterclaimants, Gallo identified itself as the single source of Familia

5   Camarena Tequila in the 172 and 175 Applications.  Counterclaimants further assert that at the time it

6   filed the 172 and 175 Applications, Gallo was aware that Tequila Supremo previously affirmed that it

7   was the sole source of Familia Camarena Tequila in its 282 Registration and 966 and 066 Applications.

8   Counterclaimants assert that Gallo's affirmations in the 172 and 175 Applications, identifying Gallo as

9   the single source of Familia Camarena Tequila, were fraudulent and made with the intent to deceive the

10   USPTO.  Accordingly, Counterclaimants seek declaratory judgment that the 282 Registration and the

11   966, 066, 172, and 175 Applications are void and seek an order directing the Commissioner of the PTO

12   to cancel those applications and registration.

13                              **Counterclaim Defendants' Additional Facts**

14    Counterclaim defendants assert that all statements made in the 282 Registration and 966, 066,

15   172, and 175 Applications are truthful and accurate.  To support the position that the applications

16   contain no such "single source" identification, counterclaim defendants rely on the following additional

17   evidence.

18    Counterclaim defendants explain that in the 2008 Agreement, Tequila Supremo agreed to distill

19   and bottle tequila for Gallo in Mexico and Gallo agreed to be the product's exclusive distributor in the

20   United States.  In 2009, after conducting market research, the parties agreed to call the product "Familia

21   Camarena," after the family that owns Tequila Supremo.  Pursuant to the 2008 Agreement, Tequila

22   Supremo ramped up its tequila production facilities while Gallo undertook to develop the product's

23   packaging, labeling, bottle design, and trade dress.

24    Pursuant to the Agreement, Gallo and Tequila Supremo agreed to market their product in Gallo's

25   bottle and packaging but under the Camarena family name.  Tequila Supremo desired to retain

26   ownership of and goodwill in the Camarena family name, which had been connected to tequila sold in

27

28    [3] Gallo's design mark applications are currently suspended pending the disposition of Agavera's senior application
     for design marks related to the 1800 bottles designs.

4

1    Mexico for several generations.  In turn, Gallo desired to retain ownership of, and goodwill in, its bottle

2    design and trade dress, which Gallo had developed at considerable expense.  Accordingly, in license

3    agreements executed pursuant to the 2008 Agreement, Gallo acknowledge Tequila Supremo's ownership

4    of the Camarena family name and trademarks and Tequila Supremo acknowledged Gallo's ownership

5    of the tequila bottle design and packaging.  Tequila Supremo licensed Gallo to use the Camarena

6    trademarks in connection with the parties' tequila product and Gallo licences Tequila Supremo to use

7    its bottled design and trademarks in the same manner.

8           Each party filed for trademark applications based on the ownership rights the parties agreed upon

9    in their 2008 Agreement and subsequent license agreements.  As the owner of the word marks associated

10   with the new tequila, Tequila Supremo applied to register the word marks related to the Camarena family

11   name.  As the owner of the trade dress, bottle designs, packaging and labeling rights, Gallo filed separate

12   applications to register its bottle designs.  As part of each application, Tequila Supremo and Gallo each

13   represented, as required by the Lanham Trademark Act, 15 U.S.C. §1051(b)(1), their intent to use the

14   specified mark at follows: "The applicant has a bona fide intention to use or use through the applicant's

15   related company or licensee the mark in commerce on or in connection with the identified goods and/or

16   services."  Consistent with this representation, Gallo and Tequila Supremo each began to use its

17   respective marks in commerce, both by itself and through its respective licensee.

18          The first sales of Camarena Tequila in the United States began around March 2012.  From that

19   time forward, Gallo began to accrue goodwill in its bottle design and Tequila Supremo began to accrue

20   goodwill in the Camarena family name in the United States.  The PTO allowed two of Tequila

21   Supremo's applications, which subsequently issued as trademark registrations.

22          Gallo and Tequila Supremo continue to operate under the 2008 Agreement and license

23   agreements today.  Pursuant to 2008 Agreement and trademark licenses executed thereunder, Gallo

24   carefully monitors all details related to sourcing, distilling, and production of the tequila in Mexico.

25   Gallo samples each production and bottling batch and works closely with Tequila Supremo to ensure

26   the quality of Camarena Tequila.

27                                              **Procedural History**

28          Counterclaimants filed their countercomplaint against Counterclaim defendants on January 20,

1   2011.  In response, Counterclaim defendants moved to dismiss the fourth counterclaim, arguing that the

2   fourth counterclaim was legally and factually insufficient.  Because the Counterclaim defendant's motion

3   improperly relied on documents outside of the pleading, the Court denied the motion to dismiss on

4   March 10, 2011.

5       Counterclaimaints moved for summary judgment on their fourth counterclaim on December 9,

6   2011.  On the same day, Counterclaim defendants also moved for summary judgment in their favor on

7   all counterclaims.  The parties filed oppositions to the motions on January 6, 2012 and replies on January

8   17, 2012.  This Court found this motion suitable for a decision without a hearing and vacated the January

9   24, 2012 hearing set on this motion pursuant to Local Rule 230(g).  Having considered the parties

10  arguments, this Court issues the following order.

11                    **STANDARDS OF REVIEW**

12      Both parties move for judgment in their favor on the fourth counterclaim, pursuant to Fed. R.

13  Civ. P. 56, which permits a "party against whom relief is sought" to seek "summary judgment on all or

14  part of the claim."  In a summary judgment motion, a court must decide whether there is a "genuine issue

15  as to any material fact."  Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

16  (1970).  A party seeking summary judgment/adjudication bears the initial burden of establishing the

17  absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

18  moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential

19  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make

20  a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and

21  on which the non-moving party bears the burden of proof at trial.  *Id*. at 322.  "The judgment sought

22  should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits

23  show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

24  as a matter of law."  Fed. R. Civ. P. 56(c).  "If the party moving for summary judgment meets its initial

25  burden of identifying for the court those portions of the material on file that it believes demonstrates the

26  absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party

27  must set forth "specific facts showing that there is a genuine issue for trial."  *T.W. Elec. Serv., Inc. v.*

28  *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).

1    To establish the existence of a factual dispute, the opposing party need not establish a material

2  issue of fact conclusively in its favor, but "must do more than simply show that there is some

3  metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

4  574, 587 (1986).  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to

5  resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv.*

6  *Co.*, 391 U.S. 253, 289 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631.  The nonmoving party must "go

7  beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and

8  admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477

9  U.S. at 324.  Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set out specific facts

10  showing that there is a genuine issue for trial."  "In the absence of specific facts, as opposed to

11  allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment

12  motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir.

13  1988).

14                    **COUNTERCLAIMANTS' PARTIAL SUMMARY JUDGMENT MOTION**

15    Counterclaimants assert that Tequila Supremo and Gallo committed fraud in applying for and

16  procuring their trademarks because they both identified themselves as the source of the goods, i.e., the

17  tequila.  Fraud in procuring a trademark occurs when an applicant knowingly makes false, material

18  representations of fat in connection with an application. *Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749,

19  755 (9th Cir. 1983); *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).  If an applicant for a

20  trademark clearly knows that its company does not own the mark when seeking its registration, then a

21  fraud on the USPTO is committed. *See United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d

22  1219 (10th Cir. 2000)*; see also, Hank Thorp, Inc. v. Minilite, Inc.*, 474 F. Supp. 228 (D. Del. 1979)

23  (registration cancelled for fraud where U.S. distributor of foreign product knew that his company did

24  not own the mark at the time of application).

25    To prove their fraudulent procurement claim, Counterclaimants must establish:

26    (1) the false representation regarding a material fact; (2) the registrant's knowledge or
     belief that the representation is false (scienter); (3) the intention to induce action or
27    refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the
     misrepresentation; and (5) damages proximately caused from such reliance.

28

1  *San Juan Prods., Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 473 (10th Cir. 1988).  If a party

2  establishes these elements, the party "may seek cancellation of a registered trademark on the basis of

3  fraud." *Robi v. Five Platters, Inc.*, 910 F.3d 1439, 1444 (9th Cir. 1990).  The "burden of proving that

4  a party fraudulently procured a trademark registration is heavy[.]" *Id*. (citation omitted).  The fraudulent

5  procurement must "be proven 'to the hilt' with clear and convincing evidence.  There is no room for

6  speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party."

7  *Smith Int'l v. Olin Corp.*, 209 USPQ 1033, 1044 (T.T.A.B 1981).

8       Counterclaimants argue that because Gallo and Tequila Supremo are separate and distinct

9  entities, Gallo is a mere distributor of Camarena Tequila, and Tequila Supremo insures the quality of

10  the tequila, Gallo cannot be the owner of the design marks related to Camarena Tequila.

11  Counterclaimants submit that because Tequila Supremo is the manufacturer of Camarena tequila, and

12  is the sole source of origin of the Camarena tequila, Gallo "could [not] possibly file applications for

13  trademarks associated with the Camarena product." Proximo Mot., p. 10.  Counterclaimants contend that

14  under trademark law, there cannot be two owners of trademarks associated with one product.

15  Counterclaimants further charge that Gallo was aware that it was not the manufacturer of the tequila at

16  the time of filing its trademark applications and knowingly misrepresented that it was the owner in an

17  attempt to register the design marks.

18                    **Fourth Counterclaim Against "All Defendants"**

19       Before addressing Counterclaimants' arguments, this Court notices the *absence* of arguments

20  related to most of the Counterclaim defendants.  As noted above, Counterclaimants assert their fourth

21  counterclaim against all Counterclaim defendants, including  Gallo, Alto Spirits, Ltd., Ecco Ecco,

22  Tequila Supremo, and Casa Tequilera Viejo.  The countercomplaint contains no allegations of fraudulent

23  misrepresentation related to Ecco, Alto Spirits or Casa Tequilera Viejo.  Nor do Counterclaimants assert

24  any arguments in this motion related to Ecco, Alto Spirits, or Casa Tequilero Viejo in this motion.

25  Accordingly, Counterclaimants' motion is denied to the extent they assert the fourth counterclaim

26  against Ecco, Alto Spirits, or Casa Tequilero.

27  ///

28                    **Fourth Counterclaim Against Tequila Supremo**

1    The Court further denies Counterclaimants' partial summary judgment to the extent they assert

2  their fourth counterclaim against Tequila Supremo.  Counterclaimants' arguments and citations to the

3  factual record belie a claim against Tequila Supremo.  Counterclaimants argue that under trademark law,

4  only the source of the tequila or the entity who has control over the quality of the tequila may apply for

5  a trademark related to the tequila.  Counterclaimants argue that "[b]oth Tequila Supremo and Gallo

6  cannot own trademarks and trade dress that designate a single source of, and responsibility for quality

7  control over Familia Camarena Tequila.  One or both, in representing to the PTO that they own such

8  marks, made fraudulent and material misrepresentations." Proximo Mot., pp. 14-15.  Counterclaimants

9  fail to establish, however, that Tequila Supremo is neither the source of, or has responsibility for quality

10 control over, the tequila.  To the contrary, Counterclaimants *repeatedly* assert that Tequila Supremo *both*

11 manufacturers and controls the quality of the tequila.  Counterclaimants support this oft-repeated

12 position with undisputed citations to the record.  Based on their own arguments and assertions,

13 Counterclaimants have failed to carry their burden to establish the first element of their fraud claim

14 against Tequila Supremo; namely, that Tequila Supremo made a false representation of material fact in

15 their 282 and 075 Registrations or their 966 and 066 Applications.  Accordingly, the fourth counterclaim

16 is denied as to this counter defendant and as to these trademark applications and registrations.

17                              **Fourth Counterclaim Against Gallo**

18      Counterclaimants' motion focuses primarily on Gallo's alleged misrepresentation of fact that it

19 is the "sole source" of the Familia Camarena tequila.  As stated above, Counterclaimants argue that the

20 undisputed facts establish that Tequila Supremo manufactures Familia Camarena tequila.

21 Counterclaimants further argue that the undisputed facts establish that Gallo does not control the quality

22 of the tequila.  Counterclaimants conclude that Gallo's attempt to procure trademarks knowing that it

23 was not the source of origin of the Camarena Tequila constitutes fraud on the USPTO.

24                                  **Fraudulent Misrepresentation**

25      The Court begins its analysis with the first element of the cause of action; namely, whether

26 Counterclaimants have established that there is no genuine issue of material fact that Gallo made a false

27 representation of material fact in its 172 and 175 Applications.  Counterclaimants make two charges of

28 fraudulent misrepresentation against Gallo.  First, Counterclaimants assert that Gallo knowingly

1  misrepresented that it was the "sole source" of the Camarena tequila.  Second, Counterclaimants claim

2  that Gallo knowingly misrepresented that it was the owner of the marks for which it applied.  Each

3  argument relies on separate theories, and will be consider separately.

4                                   *"Sole Source" of Tequila*

5         Counterclaimants assert that Gallo knowingly misrepresented that it was the sole source of the

6  tequila by filing its trademark applications.  Counterclaimants argue that in filing the applications for

7  the trademarks while knowing that Tequila Supremo manufactures the tequila, Gallo fraudulently

8  misrepresents that it is the sole source of the tequila, manufactures the tequila or controls its quality.  In

9  support of this assertion, Counterclaimants point to Exhibits 8 and 9 of the Coppola Declaration.  These

10  exhibits identify Gallo's 172 and 175 Applications respectively.  Although they cite to the applications,

11  Counterclaimants fail to quote to any language in the applications that would support this "sole source"

12  claim.

13         Having reviewed the pages cited (Bates Nos. D5831-5832 and D5874-5875), this Court finds that

14  Gallo makes no representations in its applications that it is the "sole source" of the tequila,

15  manufacturers the tequila, or controls the quality of the tequila.  No such affirmative statements are made

16  in this application and the Court finds no grounds to surmise or construe these alleged misrepresentations

17  from the statements in the applications.  Rather than claim that it's the sole source or manufacturer of

18  the tequila, Gallo represents that it is the owner of the mark.  Accordingly, Counterclaimants fail to carry

19  their heavy burden to establish that Gallo expressly misrepresented in its applications that it was the sole

20  source of Camarena Tequila.

21         In opposition, Counterclaim defendants establish affirmatively that no "sole source" statements

22  were made in Gallo's trademark applications.  Gallo points out that in each application, as required by

23  Section 1(b) of the Lanham Act, Gallo represented as follows:

24         The application has a bona fide intention to use or use through the applicant's related
           company or licensee the mark in commerce or in connection with the identified goods
25         and/or services.

26  In addition, each of the applications contained a Declaration, as required by the same section of the

27  Lanham Act, which reads in relevant part:

28         The undersigned, being hereby warned that willful false statements and the like so made

                                              10

are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the application; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her knowledge is true; and that all statements made on information and belief are believed to be true.

These are the only representations made by Gallo to the PTO in its applications.  Neither of these declarations supports Counterclaimants' assertions that Gallo misrepresented itself to be the sole source of Camarena tequila.  To the contrary, these statements confirm that Gallo represented that it owned the mark for which it was applying to be registered and that it intended to use that mark through its related company or licensee.

Counterclaimants' "sole source" theory appears to be based on outdated trademark law. Although a trademark originally indicated the source of the related product, trademark law has shifted to recognize various valid premises upon which a person or entity may own a trademark, including the control of a product's quality:

The historical conception of trade-mark as a strict emblem or source of the product to which it attaches has largely been abandoned.  The burgeoning business of franchising has made trade-mark licensing a widespread commercial practice and has resulted in the development of a new rationale for trade-marks as representations for product quality.

*Siegel v. Chicken Delight, Inc*., 448 F.2d 43, 48-49 (9th Cir. 1971).[4]   Because of this changing rationale and growth in the practice of trademark licensing and franchising, a trademark is not necessarily an indicator of source. *See In re Paramount Pictures Corp*., 213 U.S. P.Q. 1111, 1112 (T.T.A.B. 1982).

---

[4]*Compare* McCarthy on Trademarks and Unfair Competition, §18.38  ("In early common law, trademarks were thought to represent to the consumer solely the physical source or origin of the producer or service with which the trademark was used.  Under this early 'source theory' of protection, trademark licensing was viewed as philosophically impossible, since licensing meant that the mark was being used by persons not associated with the real manufacturing 'source' in a strict, physical sense of the world.") *with* McCarthy, §18.40 ("Starting in the 1930s, a new concept of the function of trademarks arose.  This new approach abandoned sole reliance on the source concept in favor of reliance on a theory that a trademark does not always necessarily indicate physical source, but also indicates quality.").

11

1  Indeed, a trademark may denote source, control of quality, and good will, among other things.[5]

2  Moreover, it is not uncommon to see marks of more than one company appearing on or denominating

3  a single product or service. "The marks of different companies may...appear on a single product where

4  they serve separate functions" such as "manufacturer/distributor" or "licensor/licensee." In re Polar

5  Music Int'l AB, 714 F.2d 1567, 1572 n.3 (Fed. Cir. 1983).   Accordingly, and contrary to

6  Counterclaimants' arguments, a trademark does not necessarily designate the source of the goods or

7  services with which it is associated.

8        Viewed under this legal perspective, Counterclaimants' "sole source" misrepresentation theory

9  fails legally and factually.   Counterclaimants argue that because trademark ownership necessarily

10  denotes the source of the goods or services, i.e., the tequila.  But because ownership of a trademark no

11  longer requires a party to be the sole source of the goods or services, then Gallo's application for a

12  trademark related to the Camarena tequila is not necessarily a representation that Gallo is the sole source

13  of the tequila.  Because application for the mark does not denote a statement of source as a matter of law,

14  Counterclaimants must establish that Gallo made affirmative statements on its application that could be

15  construed as the alleged misrepresentations.  As discussed above, however, Counterclaimants fail to

16  point to evidence to support its allegation that Gallo made such a misrepresentation.  Accordingly,

17  Counterclaimants' motion based on the alleged sole source representation by Gallo is denied.

18                                        *Ownership of Mark*

19        Counterclaimants appear to assert that Gallo misrepresented that it is the owner of the mark on

20  the applications.  A trademark applicant must be the owner of the mark. 1 J. Thomas McCarthy,

21  *McCarthy on Trademarks and Unfair Competition*, §19:53, 19-157 (citing *Holiday Inn v. Holiday Inns,*

22

23
        [5]*See* 1-1 Gilson on Trademarks §1.03(1):

24  A trademark functions and is accorded legal protection because it:
    (a) designates the source of or origin of a particular product or service, even though the source is to the consumer anonymous;

25  (b) denotes a particular standard of quality which is embodied in the product or service;
    (c) identifies a product or service and distinguishes it from the products or services of others;

26  (d) symbolizes the good will of its owner and motivates consumers to purchase the trademarked product or service;
    (e) represents a substantial advertising investment and is treated as a species of property; or

27  (f) protects the public from confusion and deception, insures that consumers are able to purchase products and services they
    want, and enables the courts to fashion a standard of acceptable business conduct.

28

                                             12

1   *Inc.*, 534 F.2d 312, n. 6 (C.C. P.A. 1976) ("One must be the owner of a mark before it can be

2   registered."); T.M.E.P. §1201.02(b) (1993) ("The applicant must be the owner of the mark for which

3   registration is requested.  If the applicant does not own the mark on the application filing date, the

4   application is void.")).

5          Counterclaimants argue that Gallo cannot own the marks because it is not the source of the

6   tequila and does not control the quality of the tequila.  Counterclaimants point out that according to the

7   undisputed evidence, Tequila Supremo manufactures the tequila–not Gallo.    Moreover,

8   Counterclaimants provide undisputed evidence that Gallo does not control the day-to-day operations of

9   Tequila Supremo and that they are unrelated companies.   Counterclaimants contend that Gallo

10  knowingly misrepresented in its application that it was the owner of the marks, even though it knew that

11  Tequila Supremo was the sole manufacturer of the tequila and that Gallo does not control the quality of

12  the goods.

13         Counterclaimants' position is based on Counterclaimants' legal conclusion that Gallo cannot be

14  the owner of the trademarks associated with Familia Camarena, because it is  not the manufacturer of

15  the tequila.  This position is related to Counterclaimants' "sole source" legal position, described above.

16  As set forth above, however, this argument does not establish that Gallo is not the owner of the mark

17  as a matter of law.  Gallo correctly points out that it may own trademark rights in the bottle design even

18  though it is the distributor of the product. *See Premier Dental Prods. Co. v. Darby Dental Supply*, 794

19  F.2d 850, 853 (3d Cir. 1986) ("It is well established that a distributor may own the trademark in goods

20  it does not manufacture."); T.M.E.P. § 1201.06(a)(2) (expressly authorizing trademark registration by

21  a United States distributor with the written consent, agreement, or assignment of a foreign

22  manufacturer).  Accordingly, while Counterclaimants have established that Gallo does not produce the

23  *goods*, Counterclaimants fail to establish that Gallo does not own the *mark*.

24         In opposition, Gallo  argues that the agreements between Gallo and Tequila Supremo establish

25  that Gallo is the true owner of the trade dress marks for which it applied in the 172 and 175 Applications.

26  Gallo establishes through evidence that Tequila Supremo and Gallo have engaged in contracts that

27  specify that Tequila Supremo owns the word marks associated with Camarena Tequila and Gallo owns

28  the bottle designs and trade dress of the packaging.  The Tequila Supply and Distribution Agreement

1  between Gallo and Tequila Supremo provides, in relevant part, that Gallo shall have the right "to use

2  the Camarena family name in connection with [the] branding, marketing, and promotion" of the tequila

3  product and Gall shall retain ownership of all "design work" developed in connection with the tequila

4  product, such as bottle design.  *See* Tequila Supply and Distribution Agreement ¶¶11.A, B and First

5  Amendment thereto ¶¶1-2.  Licenses later signed by Gallo and Tequila Supremo confirm Tequila

6  Supremo's ownership of the Camarena word marks and Gallo's exclusive right to use those marks under

7  license in the United States.  A further license later signed between Gallo and Tequila Supremo confirms

8  that Gallo owns the bottle design for the tequila product, which it licenses to Tequila Supremo. Thoukis

9  Decl., Exh. C. ¶¶1-4.

10     The agreements between Gallo and Tequila Supremo establish that Gallo owns the trade dress

11  rights for the bottle designs.  "Ownership of trademark rights in the United States as between a foreign

12  manufacturer and its U.S. distributor is largely determined by agreement between them." *Model Rectifier*

13  *Corp. v. Takachoho Int'l Inc.*, 1982 U.S. Dist. LEXIS 17601, *8; 220 U.S.P.Q. (BNA) 508 (C.D. Cal.

14  1982); *accord Hank Thorp, Inc. v. Minilite, Inc.*, 474 F.Supp. 228, 236 (D. Del. 1979).  "The assignment

15  of U.S. trademark rights and associated good will by a foreign manufacturer to its exclusive distributor

16  in the United States is normally valid and enforceable.  By assignment, [the exclusive distributor] owns

17  the registration for" the trademark. *Model Rectifier*, *supra*, 220 U.S.P.Q. (BNA) 508.  These agreements

18  create a presumption regarding trademark ownership.  *See Premier Dental Prods. Co. v. Darby Dental*

19  *Supply Co.*, 794 F.2d 850, 854 (3d Cir. 1986).  Counterclaimants fail to provide evidence to rebut this

20  presumption of ownership.

21     Moreover, Gallo presents evidence to rebut Counterclaim Defendants' position that Gallo cannot

22  own the marks, because Gallo does not control the quality of the goods.  To establish this position,

23  Counterclaimants present undisputed evidence that Gallo does not control the day-to-day operations of

24  Tequila Supremo.  In opposition, Gallo asserts that Gallo and Tequila Supremo work together to ensure

25  the quality of Familia Camarena tequila, in accordance with their Tequila Supply and Distribution

26  Agreement.  Pursuant to the provisions of that agreement, Tequila Supremo must deliver product "of

27  the highest quality and in good and merchantable condition" that satisfies applicable laws, regulations,

28  and quality standards.  The product is subject to inspection and acceptance by Gallo.  Specifically, Gallo

1  stipulates the formula, manufacturing protocol, and ingredients for Camarena Tequila. Gallo performs

2  chemical, sensory, and related analyses on every production lot and every bottling run of Camarena

3  Tequila. Gallo requests reports regarding the production of Camarena Tequila on a regular basis. Gallo

4  routinely sends representatives from numerous operating divisions to the production facilities for

5  Camarena Tequila in Arandas, Mexico to ensure adherence to production and quality control protocols.

6  This evidence amply supports that Gallo validly owns a distributors mark in bottle designs. *See Victor*

7  *Tool & Machine Corp. v. Sun Control Awnings, Inc.*, 299 F.Supp. 868, 874, (E.D. Mich 1968), *aff'd*,

8  411 F.2d 792 (6th Cir. 1969) ("The use of a trademark, however, does not necessarily as a matter of law

9  impart that the articles on which it is used are manufactured by its user. It is enough that they are

10  manufactured for him, that he controls their production, or that they pass though his hands in the course

11  of trade and that he gives them the benefit of his reputation or his name and business style.").

12         Counterclaimants have failed to establish as a matter of fact and law that Gallo made false

13  representations that it owned the marks for which it applied. Gallo successfully opposes

14  Counterclaimants' motion to establish that Gallo can own the mark as a matter of law by virtue of its

15  agreements with Tequila Supremo and the parties' joint control over the quality of the product.

16  Accordingly, Counterclaimants have failed to establish that the undisputed evidence establishes that

17  Gallo knowingly misrepresented statements on its trademark applications with PTO.

18                                        *Conclusion*

19         Counterclaimants have failed to establish that they are entitled to judgment as a matter of law

20  on their fourth counterclaim. As discussed above, Counterclaimants fail to establish as a matter of fact

21  and law that Gallo made false misrepresentations on its trademark applications. Even if

22  Counterclaimants had established the first element of this claim, Counterclaimants failed to address the

23  other elements of this cause of action. *See San Juan Prods*., 849 F.2d. at 473 (identifying the elements

24  of fraudulent procurement as: "(1) the false representation regarding a material fact; (2) the registrant's

25  knowledge or belief that the representation is false (scienter); (3) the intention to induce action or

26  refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the

27  misrepresentation; and (5) damages proximately caused from such reliance."). For these reasons,

28  Counterclaimants' partial summary judgment motion is denied.

1    ///

2    **COUNTERCLAIM DEFENDANTS' SUMMARY JUDGMENT MOTION–FOURTH COUNTERCLAIM**

3         In a separate motion, Counterclaim defendants argue that the fourth counterclaim fails as a matter

4    of fact and law.  Counterclaim defendants dispute that the applications contain inaccurate or fraudulent

5    statements, arguing that the uncontroverted evidence establishes that the statements made in the

6    applications are truthful and accurate.  Counterclaim defendants further assert that Counterclaimants'

7    "sole source" theory is based on outdated trademark law.  Finally, Counterclaim Defendants argue that

8    Gallo and Tequila Supremo are co-branding and cross-licensing, which are well-settled and acceptable

9    practices under trademark law.

10                              **"All Defendants"**

11        As noted above, Counterclaimants assert their fourth counterclaim against all Counterclaim

12   defendants, yet only assert allegations against Tequila Supremo and Gallo.  Because there are no

13   allegations asserted in the fourth counterclaim against Ecco, Alto Spirits, or Casa Tequilero, judgment

14   is GRANTED in favor of each these counterclaim defendants (Ecco, Alto, and Casa Tequiliero) and

15   against Counterclaimants for this fourth counterclaim.

16                              **Tequila Supremo**

17        Counterclaim defendants point out that in their affirmative summary judgment motion, and in

18   opposition to the Counterclaim defendants' motion, Counterclaimants present no evidence that Tequila

19   Supremo made any false statement on their trademark applications.  Counterclaimants' position relies

20   on its "sole source" theory to argue that since there can only be one sole source of the tequila, and both

21   Tequila Supremo and Gallo claim to be the sole source, one of them must have made a knowing

22   misrepresentation.   To raise a genuine issue of fact, however, Counterclaimants must go beyond

23   conjecture and point to specific evidence in the record.  Here, Counterclaimants have failed to do so.

24   Moreover, the evidence relied upon by Counterclaimants establishes that Tequila Supremo does produce

25   the tequila.  Accordingly, no genuine issue of fact exists as to whether Tequila Supremo made a false

26   representation of material fact in their 282 and 075 Registrations or their 966 and 066 Applications.

27   Accordingly, judgment is GRANTED in favor of Tequila Supremo and against Counterclaimants on the

28   fourth counterclaim and as to these trademark applications and registrations.

1    ///

2

3                                                      **Gallo**

4            Counterclaimants assert a claim against Gallo for fraud in filing the trademark registration

5    applications.  As set forth above, fraud in obtaining a trademark registration occurs when "an application

6    knowingly makes false, material representations of fact in connection with his application." *In re Bose*

7    *Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).  To establish this claim, Counterclaimants carry a "heavy

8    burden" and must establish fraud through "clear and convincing evidence." *Smith Int'l*, 209 USPQ at

9    1044.

10          Gallo asserts that the fraud claim against it fails factually, because the undisputed evidence

11   establishes that it made no misrepresentations in its trademark applications.  Gallo contends that it

12   acquired and maintained trademark rights based on the use of its mark by Tequila Supremo, its licensee.

13   Gallo correctly points out that "[o]wnership rights in a trademark or service mark can be acquired and

14   maintained through the use of the mark by a controlled licensee even when the first and only use of the

15   mark was made, and is being made, by the licensee." McCarthy, §18:46; *see also Turner v. HMH*

16   *Publishing Co.*, 380 F.2d 224, 229 (5th Cir.), *cert. denied*, 39 U.S. 1006 (1967).  Gallo further points

17   out that in its applications, it declared truthfully that it has a "bona fide intention to use *or use through*

18   *the applicant's related company or licensee* the mark in commerce or in connection with the identified

19   goods and/or services."

20          Counterclaimants' opposition relies on conjecture.  Counterclaimants continue to assert their sole

21   source theory.  Counterclaimants argue that since only one company can be associated with a trademark

22   for that good or service, and that company must be the sole source of the good or service, then only one

23   company could truthfully apply for a trademark related to Familia Camarena Tequila.  Since both Gallo

24   and Tequila Supremo applied for trademark applications related to the tequila, one of them must have

25   made a knowing misrepresentation to the PTO.  Counterclaimants fail to point to specific evidence to

26   raise a genuine issue of fact that Gallo made knowing false statements on its trademark applications.

27   Rather, Counterclaimants' rely on speculation coupled with questionable trademark law.  The absence

28   of specific evidence of false statements is compelling, particularly when Counterclaimants carry the

1   heavy burden to establish this claim of fraud by clear and convincing evidence.  On this record,

2   Counterclaimants have failed to carry their burden to oppose successfully Gallo's motion factually.

3   Accordingly, this Court Gallo's summary judgment motion as to the fourth counterclaim.

4                                          **CONCLUSION**

5          For the foregoing reasons, this Court:

6          1.      DENIES Counterclaimants' partial summary judgment motion (Doc. 185);

7          2.      GRANTS in part Counterclaim defendants' summary judgment motion as to the fourth

8                  counterclaim only; and

9          3.      DIRECTS the clerk of court to enter judgment in favor of the Counterclaim defendants

10                 and against the Counterclaimants on the fourth counterclaim only.  This order does not

11                 close this action.

12  IT IS SO ORDERED.

13  **Dated:     January 27, 2012**                        **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28