**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| E & J GALLO WINERY,<br><br>        Plaintiff,<br><br>        v.<br><br>PROXIMO SPIRITS, INC., et al.,<br><br>        Defendants. | Case No. 1:10-cv-00411-LJO- JLT<br><br>FINDINGS AND RECOMMENDATION GRANTING MOTION FOR ATTORNEYS' FEES<br><br>(Doc. 310.) |

Before the Court is a motion for attorneys' fees by Plaintiff and Counter Defendants, E&J Gallo Winery, Ecco Domani, and Tequila Supremo (collectively, "Gallo"). (Doc. 310.) Gallo argues that this is an "exceptional case" that warrants attorney fees under the Lanham Act. 15 U.S.C. § 1117(a). Defendants and Counter Claimants, Proximo Spirits and Agavera Camichines (collectively, "Proximo") dispute Plaintiffs' characterization of the case and have filed an Opposition. (Doc. 332.) For the reasons set forth below, it is recommended that the motion be GRANTED.

I.     **FACTUAL AND PROCEDURAL HISTORY**

Gallo initially filed its complaint against Proximo on March 8, 2010, seeking a declaratory judgment that Gallo's Camarena tequila packaging does not infringe upon the trademark or trade dress of Defendants' "1800" tequila. (Doc. 1.) In response, on January 20, 2011, Defendants filed a counterclaim against Gallo for alleged infringement of the trade dress of "1800" tequila.

1

(Doc. 85.)

On January 30, 2012, the Court granted in part Gallo's motion for summary judgment brought to challenge the four causes of action in Proximo's counterclaim. (Doc. 202.) The Court ruled in favor of Gallo on the first through third counterclaims. (Doc. 276.) Shortly thereafter, in a separate order, the Court denied Proximo's motion for partial summary judgment as to the fourth counterclaim and granted Gallo's cross-motion on this claim. (Doc. 278.) Thus, these orders fully disposed of the counterclaim and the Court entered judgment in favor of Gallo. (Doc. 279.) Finally, on April 4, 2012, the Court granted the motion to certify final judgment, dismissed the remaining claims, and closed the action. (Doc. 302.)

Proximo filed its notice of appeal on April 18, 2012. (Doc. 304.) Gallo filed the motion for attorney fees presently before this Court on May 2, 2012. (Doc. 310.) Proximo filed its opposition to the motion on June 5, 2012. (Doc. 332.) Gallo, likewise, filed a reply. (Doc. 347.) Following the hearing, Gallo submitted its detailed billing invoices, as well. (Docs. 355, 357, 362, 363).

**II.    SUMMARY OF THE ARGUMENTS**

Gallo argues that the awarding of attorneys' fees is appropriate here because this is an "exceptional case" under the Lanham Act. 15 U.S.C. § 1117(a). According to Gallo, the case is "exceptional" because Proximo failed to present evidence regarding basic elements of their claims, advanced theories that were largely inapplicable and without support, presented evidence that was misleading and deceptive, engaged in particularly egregious litigation conduct, and exhibited a pattern of similarly meritless claims. (Doc. 311 at 6-7.) Furthermore, Gallo argues that the attorneys' fees requested are reasonable given the excessive amount of time required for the litigation, the preclusion of representing other clients by counsel due to this litigation, the lesser than customary rates charged by counsel due to the firm's longstanding relationship with Gallo, the favorable outcome secured by counsel for Gallo, counsel's reputation, and the parity of the requested award to fee awards in similar cases. (Doc. 311 at 17-19.)

In opposition, Proximo asserts that this is not an "exceptional case" because the counterclaims were reasonably viable under the given facts and the relevant case law and were

therefore, not meritless or frivolous. (Doc. 332 at 11-12.) Proximo attests that the Defendants did not engage in egregious or bad faith conduct, and asserts instead, that Gallo has "engaged in questionable discovery tactics." (Doc. 332 at 18.) Proximo further claims that the Defendants have not pursued other frivolous claims despite Gallo's allegation to this effect. (Doc. 332 at 19.) Finally, Proximo claims that the amount of fees sought by Gallo is not reasonable because the fees charged by Gallo's counsel are not commensurate with fees charged in similar cases brought in the Eastern District of California. (Doc. 332 at 23.)

### III. LEGAL STANDARD FOR AWARDING ATTORNEY FEES UNDER THE LANHAM ACT

Section 35(a) of the Landham Act ("the Act") authorizes the Court to award attorney's fees to the prevailing party in "exceptional cases." 15 U.S.C. §1117(A). Although the language of the statute relates primarily to plaintiffs who establish violations of the Act, courts allow fees to be awarded also to prevailing defendants. Stephen W. Boney, Inc. v. Boney Services, Inc. (9th Cir. 1997) 127 F.3d 821, 827.

In evaluating what constitutes an "exceptional case" for purposes of fee awards, the Ninth Circuit has identified those cases that are "groundless, unreasonable, vexatious or pursued in bad faith." Gracie v. Gracie, 217 F.3d 1060, 1071 (9th Cir. 2000) (citing Interstellar Starship Servs., Ltd. V. Epix, Inc., 184 F.3d 1107, 1112 (9th Cir. 1999)). The requirements are disjunctive; i.e., the prevailing party need only establish one attribute of an exceptional case, not all four. ANT v. McPartlin, 2010 WL 4572690, at *4 (C.D. Cal. Nov. 2, 2010) (elaborating on the use of emphasis in describing these four requirements in Cairns v. Franklin Mint Co., 292 F.3d 1139, 1156 (9th Cir. 2002)). Thus, a non-prevailing party's ability to show the absence of one factor does not render the prevailing party ineligible for attorney's fees. Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., 668 F.3d 677, 687 (9th Cir. 2012).

### IV. DISCUSSION AND ANALYSIS

#### A. Exceptional Case

The line distinguishing exceptional cases from non-exceptional cases is far from clear. Secalt S.A., 668 F.3d at 687. It is especially fuzzy where the defendants, or in this case Counter

3

Defendants, prevail due to a party's failure of proof. Id. Gallo has set forth five different scenarios under which it claims the Court can determine Proximo's case was "groundless, unreasonable, vexatious or pursued in bad faith" and therefore "exceptional" under the Act. (Doc. 320 at 6.)

### i. Failure to Present Evidence of the Basic Elements

Gallo cites Secalt for the proposition that a failure to present evidence regarding an element of a claim, warrants an award of attorneys' fees under the Act. (Doc. 320 at 7-8 (citing the District Court ruling in Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., 2010 WL 5419055 (D. Nev. Dec. 23, 2010), aff'd in part, rev'd in part on other grounds, 668 F.3d 667. In Secalt, the court found that the plaintiff's failure to establish the non-functionality of the alleged trade dress rendered the action groundless and, therefore, "exceptional" for purposes of the fee determination. 668 F.3d at 688-689. Secalt explained that exceptional cases include instances where plaintiff's case is frivolous or lacking merit. Id.

Here, Gallo alleges Proximo's failure to present any evidence that the 1800 brand tequila trade dress was distinctive or any evidence of a material misrepresentation in support of Proximo's fraud claim supports a finding that the case is "exceptional." (Doc. 332 at 12.) For the reasons explained below, the Court finds that the matter is "exceptional" because Proximo failed to present colorable claims, as to distinctiveness and fraud.

### a. Distinctiveness

Proximo does not dispute the legal standard argued by Gallo, but alleges that it presented evidence of distinctiveness by virtue of the trademark registration of the 1800 Tequila bottle ("the '855 registration"). (Doc. 332 at 12.) Proximo contends the presumption of validity accorded to a trademark likewise confers a presumption of distinctiveness. (Doc. 332 at 12 (citing Humboldt Wholesale, Inc. v. Humboldt Nation Distrib., LLC, 2011 WL 6119149 (N.D. Cal. Dec. 8, 2011)).) However, Proximo did not argue this issue during the summary judgment proceedings and the Court rejected Proximo's attempt to do so in its motion for reconsideration. (Doc. 298 at 10; Doc. 275 at 17;Doc. 351 at 6-7.)

Additionally, Proximo does not assist this Court in demonstrating where and in what

manner it presented the evidence of distinctiveness. Despite this, this Court located a portion of Proximo's opposition to Gallo's motion for summary judgment where in Proximo identifies the '855 Registration and, without more, asserts that it is "incontestable." (Doc. 246 at 7.) Based upon Proximo's evidence (or lack thereof), the District Judge hearing the motion for summary judgment found that Proximo failed completely to address the element of distinctiveness. (Doc. 275 at 17.) Moreover, though Proximo argues that the '855 Registration was sufficient to establish the distinctiveness of the bottle without the shot glass stopper, in considering Gallo's moving papers—without the benefit of evidence or argument to the contrary—the Court hearing the summary judgment motion agreed that without the stopper, the bottle was a mere, indistinct, trapezoidal shape. (Doc. 276 at 18.) Thus, Proximo's failure to present evidence that the bottle had achieved secondary meaning was therefore devastating to the continuance of this litigation. This Court is unconvinced that Proximo was able to prove these elements but simply chose not to do so. As a result, this Court finds that Proximo's failure to present evidence of distinctiveness renders the case is "exceptional" for purposes of this motion.

### b. Fraud

Gallo argues that Proximo's failure to present evidence that Gallo misrepresented a material fact in support Proximo's counterclaim for fraud warrants attorney fees under the standards applied in Secalt. (Doc. 311 at 10.) Proximo relies on the language in Trademark Manual of Examining Procedure ("TMEP") 1201.06(a) to support the argument that Gallo, as the distributor for Camarena Tequila, had no right to register the Camarena trade dress. (Doc. 332 at 14.) Thus, in Proximo's estimation, Gallo's filing of the registration was fraudulent because it was an assertion that Gallo solely owned the mark. (Doc. 332 at 14.)

Unlike the distinctiveness issues addressed above, Proximo articulated its interpretation of the statute and the trademark applications to the Court in its opposition to Gallo's motion for summary judgment; however, the Court rejected Proximo's fraud claim.

> [T]he Court finds no grounds to surmise or construe these alleged misrepresentations from the statements in the applications. . . . Counterclaimants' "sole source" theory appears to be based on outdated trademark law. Although a trademark originally indicated the source of the related product, trademark law has shifted to recognize various valid premises upon which a person or entity may own

> a trademark . . . . Accordingly, and contrary to Counterclaimants' arguments, a trademark does not necessarily designate the source of the goods or services with which it is associated.

(Doc. 278 at 10-12.)

The Court noted that the TMEP allows the exact scenario where a United States importer or distributor for a foreign manufacturer can, indeed, register the foreign manufacturer's mark, provided the importer or distributor submits the appropriate paperwork. TMEP § 1201.06(a)(2). (Doc. 278 at 13.) Based upon the status of the law and the lack of support for Proximo's position on the registrations at issue, the Court soundly rejected Proximo's "sole source" misrepresentation. Moreover, the Court noted that even if Proximo had established a misrepresentation, it failed to address the other elements required for a fraud claim. (Doc. 278 at 15.) Given the Court's determination that Proximo failed completely to set forth a colorable claim for fraud in the summary judgment proceedings, the Court here finds the case to be exceptional.

### ii.  Inapplicable and Unsupported Legal Theories

Gallo cites at least five arguments made by Proximo during the course of litigation which Gallo believes to be inapplicable and unsupported. (Doc. 320 at 6-7.) Gallo's arguments can be broken down into two categories: 1) trade dress description and 2) Gallo's ownership of the trademark bottle design for Camarena.[1] Gallo contends that Proximo's argument, that the trade dress was comprised of several different elements from various products, was not factually applicable and lacked legal support. For the same reasons, Gallo rejects Proximo's argument that Gallo could not own a trademark for Camarena because it was manufactured by Tequila Supremo. (Doc. 320 at 6-7 (citing D.S.P.T. Int'l, Inc. v. Nahum, 2008 WL 754803, at *3 (C.D. Cal. Mar. 17, 2008) (awarding attorney fees against plaintiff in a trademark infringement case for failing to raise colorable issues of fact or law)).) Proximo's Opposition to Gallo's motion for attorneys' fees does not address either of these issues.

---

[1] The Court has addressed previously Proximo's argument that Gallo could not own a trademark for Camarena under Part IV.A.i.b. and therefore does not discuss it further here.

Although Gallo anticipated in its motion for summary judgment (Doc. 214 at 14-18) that Proximo intended to argue for a trade dress compromised of various elements that did not appear on one product, and the Court, in turn, analyzed Gallo's proof on the issue (Doc. 276 at 16-17), it is unclear from Proximo's pleadings that Proximo actually advanced or intended to pursue that argument. Rather, Proximo's Opposition focused solely on the bottle shape. (Doc. 275 at 13.) In fact, Proximo raised the other elements of the trade dress only to address the issue of public confusion. (Doc. 275 at 13.) Notably, even now, when discussing "distinctiveness" in opposition to the current motion, Proximo mentions only the shape of the bottle. (Doc. 332 at 6-7.) Based upon this Court's review of the pleadings and Judge O'Neil's Order on Gallo's Summary Judgment Motion (Doc. 275), the Court cannot find clear and convincing evidence that Proximo directly argued for a trade dress comprised of a "hodgepodge of cherry-picked elements"[2] as alleged by Gallo. Thus, this Court cannot find the case to be exceptional based upon Gallo's allegations of an ambiguous argument that was not clearly advanced by Proximo.

### iii.  False Evidence to Evade Jurisdiction

Gallo asserts that presenting false evidence supports a finding that the case is exceptional. (Doc. 320 at 13). Gallo cites to the declaration by Ricardo Juarez, who initially denied knowledge of the cease and desist letter (Doc. 27, ¶ 6, at 3), but later acknowledged authoring the letter (Doc. 79 at 3 and 8), to demonstrate the false evidence supplied by Proximo. Thus, Gallo concludes that Love v. Associated Newspapers, Ltd., 611 F.3d 601, 614-16 (9th Cir. 2011), authorizes a determination that the case is exceptional.

In Love, Brian Love sued a number of defendants for various claims, including Lanham Act violations. 611 F.3d at 606-08. In support of his claim of confusion, Love submitted a declaration by a friend of Love's attorney who claimed that he purchased a CD on eBay believing it to be a Beach Boys' album that turned out to be a solo album of Brian Wilson singing Beach Boys' songs. Id. at 608. The Court soon discovered that the affidavit was a fabrication and the affiant was not confused by the labeling of the album. Id. The trial court did not attribute any

---

[2] The quoted phrase was actually the description used by the Court to describe Proximo's potential argument that the trade dress consisted of the variety of elements set forth in Proximo's responses to interrogatories. (Doc. 275 at 12.)

1  evidentiary value to the affidavit and sanctioned Love's attorney. Id.

2  Though the Court found that the fabricated declaration "'unreasonably and vexatiously . . . lengthened or multiplied' the work of the defendants and the district court," the cure imposed was sanctions against Love's attorney. Id. Therefore, the Court did not find the case to be exceptional based upon the fabricated affidavit. The Court of Appeals observed, "Here, the district court's finding of exceptional circumstances was based not on willful out-of-court conduct by Love, but rather on the unreasonableness of his Trademark claims and his continued pursuit of the claims in bad faith." Id. at 616.

9  Here, Gallo argues that because declaration constituted "false evidence," the Court should conclude that the case is exceptional. Though the Court does not disagree that the travel to Mexico to depose Mr. Juarez increased costs, there is no showing that determining the truth of the declaration could not have been done through written form, for example. The Court recalls quite clearly that it ordered Proximo to amend discovery responses (Doc. 49), such that the falsity of the Juarez declaration should have been revealed without need for international travel. Likewise, Gallo fails to demonstrate that determining the truth of the declaration was the crucial piece of proof needed to establish this Court's jurisdiction or any other element of any other claim. Because Gallo does not support its argument that the "false declaration" played a key role in this case, the Court finds that the declaration standing alone is insufficient to support a finding that this case is exceptional.[3]

### iv. Other Egregious Conduct

21 Gallo argues that Proximo engaged in other egregious litigation conduct, rendering this case "exceptional" and thereby warranting an award of attorneys' fees. (Doc. 320 at 13.) Gallo alleges Proximo's responses to interrogatories included information that would later be revealed to be false, and cites Proximo's repeated refusals to respond to discovery requests until motions to compel were granted in favor of Gallo. (Doc. 320 at 13-14.) Gallo also cites to the seven months it took Proximo to ultimately respond to Gallo's first set of interrogatories in which Gallo asked

---

[3] In doing so, the Court does not condone this conduct and finds that denying knowledge of the letter in the capacity of a representative of one company while knowing of it in his capacity as a representative of another, is plainly ridiculous.

Proximo to define its asserted trade dress. (Id. at 14-15). Gallo asserts that by repeatedly refusing to clearly define their trade dress, Proximo delayed Gallo's motion for summary judgment, prolonged this litigation, and imposed significant expense. (Id. at 15.)

In support of its contentions, Gallo relies on authority from other jurisdictions. (Id. at 13 (citing TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator, 392 F.3d 248, 258 (7th Cir. 2004); Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 282 (3d Cir. 2000) (citing Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551-52 (Fed. Cir. 1989)). In both TE-TA-MA and Securacomm, the Courts found that a party's litigation conduct, as opposed to its willful infringement, could render a case "exceptional' and justify an award of attorney fees. (Id.).

While the Ninth Circuit agrees that a party's discovery abuses can render a case exceptional, the Ninth Circuit has often found insufficient evidence to justify attorney fees based upon a party's discovery practices, unless bad faith is shown. (*See* Designing Health, Inc. v. Erasmus 2003 WL 25902463, at *16-17 (C.D. Cal. May 1, 2003) (finding the case to be exceptional where the defendant set forth the detail of plaintiffs' discovery conduct, plaintiffs did not dispute the allegations, and the court had already imposed the ultimate sanction of dismissal against plaintiffs for their willful violations of, and disregard for the court's prior discovery orders; *but see* Stephen W. Boney, Inc. v. Boney Services, Inc., 127 F.3d 821, 827 (9th Cir. 1997) (holding that mere animosity among the two parties does not provide evidence that a case is exceptional); *see also* True Center Leasing, Inc. v. Sonoran Gate, LLC, 427 F. Supp. 2d 946, 950 (D. Ariz. 2006) (holding that misconduct falling short of bad faith or opprobrious conduct does not provide evidence that a case is exceptional) (citing McClaran v. Plastic Indus., Inc., 97 F.3d 347, 364 (9th Cir. 1996)); M2 Software, Inc. v. M2 Communications, LLC., 281 F. Supp. 2d 1166, 1176-1177 (C.D. Cal. 2003) (holding that a plaintiff's misconduct that was not egregious enough to constitute bad faith and did not warrant an award of attorneys' fees, because the fact "that Plaintiff lost its case is a sufficient sanction for its sloppy discovery conduct").

Here, though the Court is convinced that Proximo was "gaming" the discovery related to Mr. Juarez's knowledge of the cease-and-desist letter, this conduct could be attributed to

1  misguided and overly-aggressive lawyering that falls a hair's breadth short of unethical conduct.[4]
2  Thus, the Court does not find that Proximo's litigation tactics—which SHALL NOT be
3  condoned, copied or repeated—provide sufficient evidence that the case is exceptional.

### v. Pattern of Groundless Claims

5        Gallo also asserts that Proximo has exhibited a continual pattern of pursuing groundless
6  claims. (Doc. 320 at 15). Gallo cites two examples of Proximo's pattern of groundless claims: 1)
7  the trade dress infringement claim by Proximo's sister company, Ex Hacienda Los Camichines,
8  S.A. de C.V., against Tequila Don Fulano in the Instituto Mexicano de la Propriedad Industrial
9  ("IMPI") (generically referred to as the "Ex Hacienda action") and 2) the subsequent action by
10 Proximo (specifically, "Agavera") against Don Fulano in the United States for infringement of
11 the 1800 trade dress ("Fulano action"). Id. (citing Doc. 312-14 at 55). In the Ex Hacienda
12 action, the IMPI found that Don Fulano did not infringe upon the Mexican registrations related to
13 the 1800 trade dress. Id. Gallo asserts that despite the IMPI's finding in the Ex Hacienda action,
14 Proximo needlessly initiated the Fulano action. (Doc. 320 at 15).

15       Gallo relies on the findings in Secalt to support its argument that the IMPI findings in the
16 Ex Hacienda action, the motion for summary judgment in this case, and the filing of the Fulano
17 action demonstrate a "pattern of groundless claims" sufficient to consider the case exceptional. In
18 Secalt, the court noted that the defendant was on "notice" that they lacked proof non-functionality
19 of the hoist at issue, as a federal district court in Georgia had previously denied defendant's
20 request for preliminary injunction and cited defendant's lack of proof of non-functionality. 668
21 F.3d at 688. Given such notice in the Georgia matter, the Secalt court noted that defendant's lack
22 of proof of non-functionality in the Nevada matter clearly under-cut defendant's argument that it
23 was raising a debatable issue of law and fact as to non-functionality. Id. However, Secalt's
24 ultimate finding that the case was exceptional, did not turn on the prior ruling by the Georgia
25 court. Likewise, Secalt did not find that the prior ruling evidenced a "pattern of groundless

---

[4] Gallo also cites Skydive Arizona v. Quadttrochi, 704 F. Supp. 2d 841, 857-858 to support is claim that Proximo's delay in defining its trade dress is sufficient to find that the case is "exceptional." (Doc. 320 at 15). Given that Proximo's response to discovery was delayed, but still timely, and that the Skydive defendants waited until the day of trial to dismiss their counter-claims, the Court declines to find this case analogous to Skydive. Thus, the Court does not find Proximo's delay in defining the trade dress constitutes sufficient evidence that the case is exceptional.

claims" or that such a finding would have been sufficient to render the case exceptional. Id.

Even if the Court found that a "pattern of groundless claims" could give rise to a finding that a case is exceptional, this Court cannot say with certainty that, here, Gallo has established a "pattern of groundless claims" by Proximo. As Proximo points out, apart from the Ex Hacienda action, the IMPI found Gallo's three dimensional bottle design could not be registered in Mexico because its similarity to the 1800 design could result in public confusion. (Doc. 332 at 19, fn5 (citing Doc. 332-12 at 3). Given the varied rulings by the IMPI regarding the distinctiveness of the 1800 bottle design, the Court cannot find, as in Secalt, that the Ex Hacienda action put Proximo on notice that it lacked proof of distinctiveness for its 1800 bottle design. (Secalt S.A., 668 F.3d at 688).

### B.  Reasonableness of Attorney Fees

Gallo requests that this Court award $1,757,239 in attorneys' fees ($1,694,538.00, plus supplemental fees of $62,701.00). Since the Court has found this case to be "exceptional," it has discretion to award reasonable attorney fees to Gallo. 15 U.S.C. § 1117(a). To determine the amount of any such fee award, the Court will determine the lodestar figure by multiplying the number of hours reasonably spent on the litigation by the reasonable hourly rate. (*See* Intel Corp. v. Terabyte Intern., Inc. (9th Cir. 1993) 6 F.3d 614, 622 (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); *see also* Nadarajah v. Holder, 569 F.3d 906, 910 (9th Cir. 2009); 99 Only Stores v. 99 Cent Family Sav., 2011 WL 2620983 (E.D. Cal. June 29, 2011); B & H Mfg. Co. v. Lyn E. Bright, 2006 WL 547975 (E.D. Cal. Mar. 3, 2006). The fee applicant has the burden to demonstrate that the requested hourly rate and number of hours claimed are reasonable. Intel 6 F,3d at 622-623 (citing Jordan v. Multomah 815 F.2d 1258, 1263 (9th Cir. 1987). If the applicant satisfies this burden, the fee is presumed to be reasonable. Id.

However, in appropriate cases the Court may adjust the lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975). See Cairns, 292 F.3d 1139, 1158 (9th Cir. 2002). The original Kerr factors are as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5)

the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[5]

Kerr, 526 F.2d at 70. The Kerr factors which have been subsumed in the initial lodestar calculation are not used to determine whether to deviate from the lodestar figure. Blum v. Stenson, 465 U.S. 886, 898-900 (1984). Additionally, the Court need only address those Kerr factors relevant and necessary to support the reasonableness of the fee award. Cairns, 292 F.3d at 1158.

### i. Reasonable Hourly Rate

Gallo asks that the law firm of Harvey Siskind LLP, whose offices are located in the San Francisco area, be compensated for its work in this case at an hourly rate of $▇ for paralegal work and up to $▇ for attorney time. (Doc. 325 at 2-3.) D. Peter Harvey, one of the firm's partners, states that these hourly rates represent a significant discount to their customary rates and contends that such rates are significantly lower than rates charged by other attorneys in the San Francisco intellectual property legal community. (Doc. 320 at 18; Doc. 325 at 4; Doc. 314.) Proximo objects to these rates on the grounds that the hourly rate Gallo requests is not comparable to those charged by other counsel with similar experience in Fresno, California, where this Court sits. (Doc. 332 at 22-26.)

The "reasonable hourly rate" corresponds to the prevailing market rate in the relevant community, considering the experience, skill, and reputation of the attorney in question. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1985). This Court has previously found that the "relevant forum for purposes of compensation is the specific division of the district in which the court sits." (*See* Luna v. Hoa Trung Vo, 2011 WL 2078004, at *5 (E.D. Cal. May 25, 2011; *see also* Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992) (finding the community where the court sits is the relevant market for determining reasonable fees). Thus, only evidence of the prevailing hourly rate in the Fresno Division of the Eastern District of

---

[5] The Supreme Court subsequently deemed the fixed or contingent nature of the fee irrelevant to the fee calculation, thus the sixth factor above is no longer considered. City of Burlington v. Dague, 505 U.S. 557 (1992).

1  California is relevant to the motion currently before this Court. Luna, 2011 WL 2078004 at *4-5.

2  In Luna, the court described several cases in the Fresno area in which attorneys with decades of experience and competence in various areas of law had requested hourly rates at or above $400 per hour, but had only supported their request with evidence of case examples outside the Fresno practice area.  Luna, 2011 WL 2078004 at *4-5.  While there does not seem to be a question here, that attorney Harvey has a reputation of competence in intellectual property law or that his years of experience do not support such competence, the Court does not find sufficient evidence to demonstrate that the prevailing hourly rate in the Fresno area supports the hourly fee requested by Gallo. Luna, 2011 WL 2078004 at *4-5.  Gallo, in fact, acknowledges that if Fresno is "relevant community", the reasonable hourly rate for attorney Harvey is at least $375.  (Doc. 351 at 12.)

Gallo also seeks compensation for work performed by the Fresno law firm that initially represented Gallo in this matter: McCormick Barstow Sheppard Wayte & Carruth LLP ("McCormick Barstow").  (Doc. 325 at 3.)  The highest hourly rate charged by any attorney for McCormick Barstow in this motion for fees is $325 per hour.  (Doc. 312 at 3.)

This Court has previously identified $375 per hour as the top of the compensation range for a senior attorneys practicing in the Fresno area.  Given the Court's prior finding regarding fees, this Court finds that the requested hourly rate of $▬ per hour for attorney Harvey is not reasonable for this forum.  Instead, the Court recommends $375 per hour be deemed the reasonable hourly rate for attorney Harvey's time and that the hourly rates charged by other members of the Harvey Siskind firm be proportionally reduced[6] as well.  (See Luna 2011 WL 2078004, at *5).  The hourly rates requested for the work performed by McCormick Barstow are within the compensation range for attorneys practicing in the Fresno area and are therefore

---

[6] The rate adopted by the Court represents a ▬ discount of the hourly fee charged by attorney Harvey.  The Court will therefore apply this discounted rate across all rates charged to Gallo by Harvey Siskind LLP.  According to attorney Harvey's declaration, the following persons from his firm assisted in the litigation of this case: D. Peter Harvey (DPH), Noami J. Gray (NJG), Matthew A. Stratton (MAS), Seth I. Appel (SIA), Don A. Thompson (DAT), Elena Benavente (MEB).  Although other members of the firm assisted occasionally in the litigation, Gallo does not seek to recover fees incurred for any other members of the firm.  Thus, any references to billing by persons not named above will be excluded.  (Doc. 312 at 2.)

deemed to be reasonable.

### ii. Reasonable Time Spent

Since January 2010, Gallo has primarily utilized 6 attorneys and 2 paralegals, who have spent a total of $4,826.4 hours on the case. (Doc. 312-2, 326). In determining the lodestar figure, "[t]he district court . . . should exclude from this initial calculation hours that were not ‚reasonably expended.' Cases may be overstaffed, and the skill and experience of lawyers vary widely." Hensley, 461 U.S. at 434. While reasonable hours may include time spent by more than one attorney on a particular issue or task, if there is duplication of effort, the court may reduce the total hours claimed. Davis v. City & Cnty. of San Francisco, 976 F.2d 1536, 1544 (9th Cir. 1992). Furthermore, the Supreme Court has held:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, ‚billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's *adversary* pursuant to statutory authority."

Hensley, 461 U.S. at 434.

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. Id. at 433, 437; *see also* Blum, 465 U.S. at 896; Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The party opposing the fee application may challenge the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. Blum, 465 U.S. at 892 n.5; Toussaint v. McCarthy, 826 F.2d 901, 904 (9th Cir. 1987).

A court must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *See* Common Cause v. Jones, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also* McGrath v. Cnty. of Nevada, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness of time expended without independently reviewing the record); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request where "the district court engaged in the ‚regrettable practice' of adopting the findings drafted by the

prevailing party wholesale" and explaining a court should not accept[] uncritically [the] representations concerning the time expended"). To demonstrate that the amount of time spent on the case was reasonable, the party must present more than simple records demonstrating the time actually spent on the case. Sealy, 743 F.2d at 1385. "Where the documentation of hours is inadequate, the district court may reduce hours accordingly." Hensley, 461 U.S. at 433.

Gallo's counsel has provided evidence documenting the tasks performed, the amount of hours spent by the legal professionals in both the Harvey Siskind and McCormick Barstow firms, and the hourly rates for the work that was charged. (Docs. 312-2, 326, 355, 357.) With this information, the Court now reviews the time billed to assess whether it is reasonable in light of the work performed and the context of the case. *See* Common Cause, 235 F. Supp. 2d at 1079.

### a) **Apportionment**

Gallo's request for attorneys' fees is based upon all attorney fees it incurred as of the date of the filing of their own complaint. (Doc. 312 at 2). However, under 15 U.S.C. § 1117(a), attorney fees are recoverable only for legal work performed in connection with claims filed under the Lanham Act. Gracie v. Gracie (9th Cir. 2000) 217 F.3d 1060, 1069. Thus, there is a general rule which requires a Court to apportion or an attempt at apportion the fee award so as to exclude any fees for legal work performed on non-Landham Act causes of action, unless the court finds the Landham Act and non-Landham Act claims are so inextricably intertwined that even an estimated adjustment would be meaningless. Gracie 217 F.3d at 1070.

Here, Gallo's motion for summary judgment challenged all four causes of action raised by Proximo's Counterclaim. (Docs. 275, 278.) In order to determine whether the time spent by Gallo's counsel was reasonable, the Court must first evaluate the four causes of action to determine which are eligible for attorney's fees under the Landham Act.

### 1) **Gallo's Defense of Proximo's Landham Act Claims**

Given that Gallo initiated this case against Proximo, the Court finds that any work performed on the case prior to Proximo's January 20, 2011 Counterclaim was solely a function of Gallo's decision to file for declaratory relief against Proximo and should not be attributed to Gallo's defense of the Landham Act causes of action brought by Proximo. As a result, it is

recommended that only the legal work billed to Gallo after January 20, 2011 be eligible for recovery of attorneys' fees. (Doc. 85.)[7]

### 2) Landham Act Claims

The Court finds that Proximo's first three causes of action against Gallo are Landham Act claims that are eligible for recovery of attorney fees. Since Proximo's first cause of action expressly alleges infringement of their trade dress in violation of the Lanham Act, 15 U.S.C. § 1114, et seq. (Doc. 85 at 11), Gallo is eligible for attorney fees incurred in the defense of this cause of action. Proximo's second cause of action likewise alleges a direct violation of the Landham Act; specifically, the use of false designations of origin. (Doc. 85 at 11-12.)

Proximo's third cause of action which alleges unfair competition under "common law" is likewise eligible for reimbursement. (Doc. 85 at 12.) Standing alone, Proximo's unfair competition claim is a non-Lanham Act claim. As such, it requires a showing that it is so intertwined with the Lanham Act claims so as to be impossible to differentiate work done on each claim individually, is ineligible for an award of attorneys' fees. Given that unfair competition claims rely on the same contentions as patent infringement causes of action and thus, rise and fall together with Lanham Act claims, such claims are frequently considered to be so inextricably intertwined with those Lanham Act claims that adjustment of attorneys' work done on them would be meaningless. BBQ Hut, Inc. v. Maelin Enters., 2008 WL 2687685, at *3 (D. Ariz. July 3, 2008); see also Yeager v. Bowlin, 2010 WL 2303273, at *9 (E.D. Cal. June 7, 2010); World Triathalon Corp. v. Dunbar, 539 F. Supp. 2d 1270, 1282 (D. Haw., 2008). The Court finds that to be the case here. Consequently, all legal work attributed to the defense of the third cause of action is eligible for reimbursement.

### 3) Non-Landham Act Claims

Proximo's fourth cause of action alleges Gallo committed fraud upon the United States

---

[7] During oral argument, Proximo argued that Gallo's suit made Proximo's counterclaim compulsory and therefore, Proximo should not be "punished" for bringing its cross-complaint. As described in Part IV.A. above, the Court's finding that the case is "exceptional" is not predicated on the mere fact that Proximo filed a counterclaim; rather, the Court's finding was based on Proximo's failure to present evidence to support the causes of action alleged in their counterclaim.

Patent and Trademark Office. (Doc. 85 at 13; Doc. 332 at 14 (citing TMEP § 1201.06)). Since this claim is independent of the Landham Act and Gallo has not shown it to be intertwined with the other Landham Act claims; it is not eligible for an award of attorneys' fees. Thus, time billed for work related to the defense of this cause of action will be excluded.

### b) Travel Fees

In the billing submitted by Gallo, counsel for both firms has included travel time within their hourly rates. (Docs. 312-2, 326, 355, 357). The task of determining the appropriate methodology for evaluating the reasonableness of fee awards "begins and ends with an interpretation of the attorney's fees statute." Blum, 465 U.S. at 892. Travel time to attend meetings, depositions, and court may be recovered if local attorneys in private practice customarily bill their clients for this time. Davis, 976 F.2d at 1543; see also Chalmers v. Los Angeles, 796 F.2d 1205, 1216 (9th Cir. 1986). Gallo bears the burden of showing that it is entitled to the claimed hours. See Hensley, 461 U.S. at 434. The Court has reviewed Gallo's briefs and declarations and found no showing that local attorneys in Fresno customarily bill their clients for travel time at their regular hourly rate (other than the obvious fact that McCormick Barstow billed for such time in this case). As a result, the Court will exclude hours claimed for travel time.

### c) Supplemental Invoices

After the hearing on the motion, the Court allowed Gallo to supplement the invoices it previously produced with the additional attorneys' fees it incurred in bringing this motion. (Docs. 361, 362, 363.) Specifically, Gallo requests an additional $62,701.00 in attorney's fees for 166.2 hours of work performed at the previously requested hourly rates. (Docs. 362, 363). The Ninth Circuit has held that time spent on such motions, specifically motions for attorneys' fees, is a necessary part of awards of attorneys' fees. See Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (holding that an omission of attorneys' fees by a district court, for work done on a motion for fees, would have been in error); Spalding Labs., Inc. v. Arizona Biological Control, Inc., 2008 WL 2227501, at *3 (C.D. Cal. May 29, 2008) (granting an additional award of fees sua sponte, for time spent preparing the motion for attorneys' fees); Jones v. County of Sacramento, 2011

WL 3584332, at *20 (E.D. Cal. Aug. 12, 2011) (granting an award of fees for time spent on a motion for attorneys' fees, finding that the amount of 79.5 hours requested was reasonable in light of the extensive nature of the motion). Subject to the apportionment and reasonableness issues previously discussed, the supplemental fees are eligible for recovery.

### iii. Lodestar Amount

The Court has reviewed Gallo's billing invoices and other evidence submitted in support of this motion. Although Gallo utilized the services of two law firms in this case, McCormick Barstow's work on the case only constituted about 5% of the total hours worked. Thus, the work billed by the two firms did not appear duplicative. Additionally, the billing incurred due to discovery disputes appeared reasonable and appropriate given the issues in the case. Based upon the Court's review of that evidence and the factors discussed in Parts IV.B.i-ii above, the Court finds the remaining time spent by Gallo's counsel to be reasonable in light of the work performed and issues in this case.

The specific amounts deducted from Gallo's requested fees from January 20, 2011 forward are as follows: $██████ for time spent on Proximo's fourth cause of action, $██████ for travel, and $██████ in hourly fee reductions for Harvey Siskind employees. After the Court reduced the hourly rate for the Harvey Siskind employees by ██████, excluded all billing incurred before January 20, 2011,[8] subtracted billing that was attributed to work on Proximo's fourth counterclaim, and eliminated billing associated with travel time, the Court calculated the eligible lodestar amount as $986,958.46. ($942,853.46 is designated as reimbursement for legal fees paid to Harvey Siskind LLP and $44,105.00 is designated as reimbursement for legal fees paid to McCormick Barstow.)

### iv. Evaluation of Relevant <u>Kerr</u> Factors.

Since the Court has calculated the lodestar fee based on the extensive considerations above, the Court sees no need to further adjust it based on any of the <u>Kerr</u> factors. Other than the factors already addressed and subsumed in the lodestar consideration, the Court does not see any

---

[8] Gallo's next billing statement from Harvey Siskind, LLP following Proximo's January 20, 2011 counterclaim is dated March 9, 2011 for services incurred between February 1, 2011 and February 28, 2011. (Doc. 355 at 58).

significant influence from those factors argued by the parties. Although the case was complex, its difficulty did not appear to rise above a level seen in other similar trademark cases. Both sides have alleged that the other engaged in dilatory tactics, nullifying any potential effect of time- or duration-based considerations. Finally, the award is comparable to recent similar cases. E.g., Secalt, 668 F.3d at 689 (affirming award of $836,899.99 in attorneys' fees); Love v. Associated Newspapers, 611 F.3d at 616-17 (affirming award of $518,859 in attorneys' fees). Therefore no multiplier, either upward or downward, will be applied to the lodestar calculation.

## V. CONCLUSION AND RECOMMENDATIONS

Since Proximo failed to provide any evidence to support the essential elements of its causes of action for fraud and trademark infringement in its motion for summary judgment, the Court recommends the case be deemed "exceptional." For exceptional cases, the Court has discretion under the Landham Act to award attorney fees to the prevailing party. Here, Gallo has submitted detailed invoices to demonstrate that the time spent on the case was reasonable in light of the issues in the case. While the Court agreed that the majority of the fees charged to Gallo were reasonable, the Court recommends the following adjustments: 1) that the reasonable hourly rate for each member of the Harvey Siskind firm be reduced by ▮▮▮▮ to reflect a maximum hourly rate of $375 per hour; 2) that any fees incurred prior to the filing of Proximo's counterclaim on January 20, 2011, be eliminated; 3) that all fees related to the defense of Proximo's fraud claim be eliminated, as it is a non-Landham Act claim; and 4) that Gallo's hourly billing for travel be eliminated, as Gallo failed to demonstrate such fees are generally charged. For the reasons set forth above, this Court **HEREBY RECOMMENDS**

1. Gallo's motion for attorneys' fees be **GRANTED**.
2. Gallo be awarded $986,958.46 in attorneys' fees.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these findings and recommendations, the parties may file written

objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the Objections shall be filed and served within fourteen days of the date of service of the objections.

IT IS SO ORDERED.

Dated: **July 21, 2012**        **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE